S. E. IRISH ET AL., v. MORRIS STEEVES ET AL., Appellants.

**Conveyances:** ABSOLUTE DEED AS MORTGAGE: EVIDENCE. A warranty
1 deed and contemporaneous agreement containing a provision for reconveyance on certain conditions, which were never performed, and providing that the same shall not be considered as a mortgage, will not be so construed except upon very strong and persuasive evidence.

**Wills:** ELECTION BY WIDOW: EVIDENCE. Under the Code of 1873 it
2 was necessary for a widow, except by estoppel arising from her acts or conduct, to file her election to accept the provisions of the will to bar her right to a distributive share in her husband's estate; and the only competent proof of such an election was a writing signed by her and so filed. In this case the evidence is insufficient to show an election.

**Same:** CONVEYANCE BY REMAINDERMAN: ESTOPPEL BY DEED. Under the
3 statute providing that a deed purporting to convey a fee estate shall pass any title subsequently acquired, a remainderman who has conveyed his interest by warranty deed is estopped from claiming title as an heir of his mother, when it subsequently appeared that she had a distributive share in the estate by reason of a failure to elect to accept the terms of her husband's will instead.

**Same.** The testator in this case devised a life estate to his wife
4 with a portion of the remainder to a daughter-in-law, who conveyed by warranty deed during the life of the widow, her husband joining, to another remainderman, the deed reciting that it was subject to the life estate. It subsequently appeared that the widow was the owner of a distributive share of the estate, never having elected to accept the provisions of the will. *Held,* that the husband of the daughter-in-law was not estopped by joining in the deed from claiming an interest in his mother's estate in the property; since under the statute the covenants of the deed were not binding upon him, and the recital that it was subject to the life estate was of no more force than the covenants; and it will not be assumed that either of the parties to the deed intended that the husband was relinquishing an interest in property which neither supposed existed.

**Same.** A legatee in this case whose bequest was a lien upon land executed a quitclaim deed of the same to another legatee who paid the amount of the bequest. Held, that she was not estopped to claim a share in the land as heir of her mother, who was subsequently discovered to own a distributive share in the husband's and father's estate, and who died after the execution of the quitclaim deed.

**Tenants in common:** ACCOUNTING. A tenant in common of property and in possession thereof should be charged with income of the property as an offset to amounts paid in satisfaction of mortgages and taxes.

*Appeal from Van Buren District Court.*—HON. M. A. ROBERTS, Judge.

FRIDAY, FEBRUARY 16, 1912.

ACTION to quiet title. There was a decree granting relief as against one of the defendants and as to others denying the full relief prayed in the petition. Both the plaintiffs and the defendants appeal, but, as defendants' appeal was first perfected, they will be treated as appellants.—*Affirmed* on plaintiffs' appeal; *modified and remanded* on defendants' appeal.

*Walker & McBeth,* for appellants.

*S. E. Irish, Robt. & H. B. Sloan, E. L. McCoid,* and *Joseph C. Mitchell,* for appellees.

McCLAIN, C. J.—The plaintiffs seek in this action to have their title quieted as to two adjoining eighty-acre tracts of land, each being the east half of a quarter section. For convenience these two tracts will be designated in this opinion as the north eighty and the south eighty. Together these two tracts of land constituted the farm of one John Steeves, who, on his death in 1895, left a will, duly probated, devising to his surviving wife, Mahala, a life estate in the

farm in lieu of dower, with remainders as follows: To his daughter Mary, (subsequently the wife of O. L. Stevens) the south three-eights of the south eighty; to Sadie, the wife of his son Harvey, the north five-eighths of the south eighty; and to his son Alfred the entire north eighty, charged with bequests to be paid by him on or before two years from the death of the widow to his brothers and sisters in the total sum of $525. The claim of the plaintiffs is that Alfred Steeves, becoming the sole and unqualified owner of the north eighty, on the death of the widow terminating her life estate, and also the sole and unqualified owner of the south eighty by conveyances from the devisees thereof, conveyed the entire tract of land to plaintiffs by an instrument which was in nature a warranty deed with an accompanying contract by which it was to be reconveyed from plaintiffs to him on the payment of a specified sum, and that such sum of money was not paid, and no reconveyance was demanded within the time limited in the contract for such conveyance. The claim of Alfred Steeves is that this conveyance to plaintiffs was procured by fraud, and was, in fact, intended and understood by both parties to be a mortgage to secure the payment of a sum of money by Alfred Steeves to the plaintiffs, and an accounting is asked for the purpose of determining the amount to be paid, if any, by way of redemption. The other defendants claim undivided interests in the land as heirs of the widow under the contention that she never elected to accept the provisions of the will in lieu of dower, and died entitled to an undivided one-third of the entire farm, none of which interests passed to plaintiffs under the conveyance to them by Alfred Steeves or otherwise. These statements as to the claims of the parties are not drawn from the pleadings which are extremely voluminous, but they substantially represent the issues presented to the lower court for determination. It is apparent that one controversy is as to the validity and effect of the conveyance from Alfred Steeves

to plaintiffs purporting to transfer title to the entire tract
of land; while another and wholly independent controversy
is that between plaintiffs and the heirs of the deceased
widow, relating to the interests claimed by them which
never were conveyed as such to Alfred, and therefore did
not pass as claimed under Alfred's conveyance to plaintiffs.

The lower court held that the instrument purporting to be
a conveyance from Alfred Steeves to plaintiffs was not a
mortgage, but a deed with an agreement to reconvey on cer-
tain conditions which had not been performed, and there-
fore passed to plaintiffs all the title which the grantor had
in the entire premises; but, as between plaintiffs and the
heirs of the deceased widow, it held that the widow died
seised by way of dower of an undivided one-third of the
entire tract of land, and that the interests of her heirs as
such have never been conveyed to Alfred, and did not
therefore pass under the conveyance made by him to the
plaintiffs.

It would be useless to attempt to state without sub-
stantially copying the record the testimony relating to the
question whether the conveyance from Alfred Steeves to the
plaintiffs was in fact a mortgage, instead of
being, as it purported to be, a conveyance
with an agreement on the part of plaintiffs
to reconvey to the grantor on payment of $1,000 within
one year. The best that can be done under the circum-
stances is to state briefly uncontroverted facts and the con-
clusions which we draw from the evidence as to the facts
which are in controversy. The conveyance itself was in
form a warranty deed for the express consideration of
$1,000, subject, however, to certain mortgages. It appears
without controversy in the evidence that, before this deed
was executed, Alfred Steeves had been arrested for forgery
or the passing of a forged instrument and had had some
conversation with the plaintiff S. E. Irish (who will here-
inafter be referred to as though he were the sole plaintiff,

1. CONVEYANCES:
absolute deed
as mortgage:
evidence.

his co-plaintiff being his wife, to whom he subsequently executed a conveyance of the property) with reference to being represented by him as attorney in securing a release from arrest on bond, and making defense to the prosecution, and that after he was released from arrest, and while the prosecution was pending, it was arranged between them that plaintiff should represent him as attorney, the conveyance being either in payment of or as security for plaintiff's attorney fee, and the warranty deed was executed in pursuance of this arrangement. The written instrument executed at the same time recites an agreement that if the said Steeves shall pay to the said Irish within twenty days after his release from said cause or the exoneration from said bond the money deposited by way of bail for his release in the sum of $500 and the further sum of $500 within one year from said release or exoneration of said bond, with interest from the date of the release, then said Irish will reconvey to said Steeves the real estate described in the deed clear of all claims placed thereon by said Irish immediately upon the payment of said sum in full, but that, if said payments provided for are not made, the obligation to sell or reconvey shall be void and of no effect; and "it is specially provided that in no sense shall this agreement be considered a mortgage so as to necessitate a foreclosure hereof, but it is and shall be an agreement to sell or reconvey upon the payment or for the sum of $1,000, and interest if paid within one year from the date of the releasing the money deposited for bond, or dismissal of the cause pending." Steeves was convicted of the crime charged against him and sentenced to imprisonment in the penitentiary for eight months, and to pay a fine of $100. Thereupon Irish drew from the clerk of the court the balance of the $500 over and above the amount of the fine and used about $95 of the balance to pay, at Steeves' request, an indebtedness of the latter. Whether the balance of the money thus procurd by Irish from the clerk was appropriated by

him to his own use or paid out on claims against Steeves which he was authorized to pay is a matter of controversy in the record, and in the view which we take of the case need not be further considered. After Steeves had served his sentence and been released from imprisonment, he had negotiations with Irish in reference to a reconveyance of the property, but eventually made some arrangement with one Slutts which Irish claimed amounted to a conveyance of the entire tract of land to said Slutts, and in pursuance of this arrangement, whatever it was and however it may have been represented to Steeves, the latter placed Slutts in the possession of the entire farm, possession of which had prior to that time been retained by Steeves, who during his mother's lifetime had lived with her or she with him on said farm. Subsequently Slutts abandoned the farm and left the state, and plaintiff conveyed the south eighty to one Calhoun.

We are unable to find in the evidence any sufficient grounds for holding that Steeves was defrauded into executing any other or different instruments than those which he intended to execute, nor can we find any sufficient evidence to justify us in holding that the deed and the written agreement together, in fact, constituted a mortgage from which Steeves is now entitled to redeem.

In the face of the express written recital of an agreement to reconvey, it would certainly require very strong and persuasive parol evidence to convert the transaction into a mortgage. We need not discuss the question as to which counsel cite authorities whether such an express agreement for reconveyance on specified terms within a specified time can be shown by parol to be in fact only a mortgage. It is sufficient to say now that there is not in this record any such persuasive evidence as would justify us in disregarding the express recitals of the parties as to their intention. We reach the conclusion that the lower court did not err in finding that the warranty deed conveyed to plaintiff all the

interest which Steeves had in the property, and that, in the absence of compliance by Steeves with the conditions for repurchase, his interest in the property has wholly terminated.

II.   The widow of John Steeves, the provisions of whose will have been already referred to, remained on the farm with her son Alfred until her death, and her entire

2. Wills: election by widow: evidence.

relation to the property was consistent with an intention to accept the provisions of the will in her favor giving her a life estate in the entire property in lieu of dower.   Without doubt her children all believed and had reason to believe that she had relinquished her dower interest, so far as such relinquishment could be effected by the mere expression of intention. But the statutory provision on the subject which was in force when the will was probated (Code of 1873, section 2452), provided that the widow's share could not be affected by any will of her husband unless she consented thereto "within six months after notice to her of the provisions of the will by the other parties interested in the estate, which consent shall be entered on the proper records" of the probate court.   It is not claimed that any such notice was given to the widow in this case, and the plaintiff produces no record of the probate court showing the consent of the widow to take the provisions of the will in her behalf in lieu of dower.   One witness testified that, when examining the files of papers relating to the estate of John Steeves in the clerk's office, he saw a written election of the widow to accept the provisions of the will, and in a general way he testified that the widow had filed an election in the handwriting of the clerk, but on cross-examination he said that he left the papers in the clerk's office, and that the election was with them, not attached to the other papers, but folded in with the other papers, and that he never looked for any record where it had been entered.   His final statement was: "I now think I saw a loose piece of paper in Mr. Brown's

handwriting which was an election under the will." Being subsequently recalled for the plaintiff, this witness testified that on the occasion already referred to he went to the clerk's office and got the papers in the estate and looked them over; and, further: "I do not remember all the facts, but I do remember my conclusions at the time. I can't state all the details of it. I remember what the terms of the will were, and what I concluded from reading the original will and the records. I also saw she waived her dower right. There was a writing, but I could not give you the wording of it. The substance of it was that she had elected to take the life estate under the will." It will be observed that the witness' testimony is only by way of conclusion as to the signature of the widow to this paper, purporting to be an election on her part, and that he does not pretend to have noticed whether it bore a filing mark such as to make it a part of the records in the estate case. We need not now decide whether, if such paper had been actually filed, the election would be sufficiently made out. It is enough to say that there is no evidence in the case showing the filing of an election by the widow. Without such evidence, it is clear that the statutory election is not made out; and it has been frequently held no other evidence of election by the widow was sufficient under this statutory provision to bar her dower right. *Jones v. Jones,* 137 Iowa, 382; *Byerly v. Sherman,* 126 Iowa, 447. No doubt the widow might by deed or conduct have estopped herself from asserting her dower right (see *Koep v. Koep,* 146 Iowa, 179), but no act or conduct of hers appears in the record even tending to establish an estoppel in favor of either her son Alfred or this plaintiff. It follows that on her death her undivided dower interest, which had not been relinquished by any valid election, descended to her children, who thereupon became entitled each to his or her proper portion of an undivided one-third of the entire farm. The children thus surviving her are the sons, Alfred, Morris, and Harvey, and

the daughters, Ella Snyder and Emma Smith, all of whom, with their respective wives or husbands, as the case may be, are parties to this action.

By this warranty deed to plaintiff, Alfred is estopped from asserting, as against plaintiff, any interest as heir of his mother in the premises, for such deed purported to convey a fee-simple title to the entire tract of land. See Code, section 2915. But, before Alfred executed the conveyance to plaintiff, his brothers and sisters had executed deeds to him for certain portions of the land or for their interests therein, and it becomes necessary to inquire whether as to each an estoppel by deed has arisen upon which plaintiff, as grantee of Alfred, may rely to defeat the assertion of an undivided interest as heir of the mother. Mary Stevens did not survive her mother and left no children, but prior to her death she had conveyed the south three-eighths of the south eighty to Alfred. Sadie Steeves, devisee in the will of the north five-eighths of the south eighty (her husband Harvey Steeves joining with her in the conveyance), prior to the death of Harvey's mother, conveyed the share which she took under the will to Alfred by a warranty deed, hereafter to be referred to. Morris Steeves, Ella Snyder, and Emma Smith, prior to the death of their mother, executed quitclaim deeds to Alfred which will be hereafter more specifically referred to. Therefore, when Alfred conveyed to plaintiff, he was vested with fee-simple title to the entire farm, unless the interests of his two brothers and two sisters, respectively, as heirs of their mother, had not been vested in him.

*3. SAME: conveyance by remainderman: estoppel by deed.*

The conveyance of Sadie and Harvey Steeves to Alfred was a warranty deed of the north five-eights of the south eighty, "subject, however, to the life estate of Mahala Steeves." By inurement this warranty deed carried whatever interest Harvey Steeves as heir of his mother afterwards acquired in that portion of

*4. SAME.*

the land subject to two questions: First, whether, as the
devise of this tract of land was to his wife, Sadie, and not
to himself and he therefore joined with her in the deed as
her husband, the recitals estop him from asserting interest
as heir of his mother in that tract; and, second, whether
the assertion that the conveyance was subject to the as-
sumed life estate of his mother estopped him from now as-
serting that he took any interest as heir of his mother, in
view of the conclusion already reached that his mother had
a dower interest which she had not relinquished. The re-
cital in this deed is "that we, Sadie Steeves and Harvey
Steeves, her husband, . . . do hereby sell and convey
unto the said Alfred Steeves, the following described premi-
ses," describing the north five-eighths of the south eighty
(subject, as already stated, to the life estate of Mahala
Steeves) with the usual covenants. The covenants of title
were not binding upon Harvey, the husband (see Code, sec-
tion 2921; *Thompson v. Merrill,* 58 Iowa, 419; *Moore v.
Graves,* 97 Iowa, 4; *Blumenthal v. Culver,* 116 Iowa, 326)
and under this statute and decisions it is clear that the re-
cital in the granting clause would not estop Harvey from
subsequently asserting his interest as heir of his mother.
It would be unreasonable to give to the recital in the grant-
ing clause any greater effect by way of estoppel than is
given to the express warranty of title. The reservation of
the mother's assumed life estate ought not, we think, to be
construed into an estoppel against Harvey as to his interest
as his mother's heir, for the double reason that such a re-
cital ought not to be given greater effect than the express
warranty, and that, in any event, such a recital ought not
to be construed to cut off the right of Harvey to claim that,
notwithstanding the assumption that the mother's interest
was only that of a life estate, as matter of fact she was en-
titled to a one-third interest in fee as dower. Neither the
grantors nor the grantee can be assumed to have had in mind

the relinquishment by Harvey of an interest which neither of them supposed to exist. *Wolf v. Wolf,* 152 Iowa, 121.

The conveyance by Emma Smith and her husband to Alfred, which is relied upon to estop Emma from claiming as against plaintiff, any share as heir of her mother in the premises is a quitclaim to Alfred of "all

5. SAME.     our right, title and interest in and to" the north eighty, "the above described land .being willed to Al(fred) Steeves subject to the life estate of his mother, the bequest to Emma Smith of $150.00 and certain other bequests by the will of John Steeves, deceased. The intention being to acknowledge the receipt of our bequest and releasing the land therefrom." We think no elaboration is necessary to justify the conclusion that there is nothing in this instrument estopping Emma from now claiming, as against plaintiff, the interest which she has acquired as heir to her mother. Ella Snyder and husband and Morris Steeves and wife joined in a quitclaim deed to Alfred of all their interests in the north eighty similar in general terms and effect to the quitclaim of Emma Smith, above referred to.

We are satisfied, therefore, that the trial court did not err in finding that the four defendants, brothers and sisters of Alfred, are not estopped by their conveyances to him from now claiming each a one-fifth share of the one-third undivided interest which their mother held as dower. It may be true that if these parties had appreciated the fact that their mother held an undivided dower interest, instead of a life estate, Alfred would not have paid the legacies in full, and the conveyances to him would not have been made. But that is a mere matter of speculation. They all assumed to act in view of the title as it actually existed, and we think that the conveyances should not be given any different effect so far as this plaintiff is concerned than that which would have resulted from the making of them if the true state of the title had been understood when they were made.

But in one respect the decree must be modified. Notwithstanding the finding by the court that Harvey Steeves is not estopped by the deed in which he joined with his wife in conveying to Alfred the north five-eighths of the south eighty from claiming as heir of his mother a one-fifth interest in her undivided one-third thereof, the decree denies him that interest as to said tract. In this respect it is erroneous.

In another respect, also, the decree should be modified. Plaintiff is allowed for amounts paid in satisfaction of mortgages and taxes, but is not charged with rents and profits received. As he has been tenant in common with the two brothers and two sisters of Alfred Steeves, he should, as against the amounts paid out in satisfaction of mortgages and taxes, be charged with what he has received. We do not find that he has actually received anything by way of rent; but he did receive $156.20 for wood sold from the land, and this should be offset against his claim for money paid out on account of the mortgages and taxes. The decree contains complicated provisions for setting off the interests of the four heirs of Mahala Steeves in the entire tract from the north eighty, which remains the property of plaintiff. No complaint is made of these provisions otherwise than as above indicated, and we need not describe them in detail.

6. TENANTS IN COMMON: accounting.

Without following counsel through the mazes of their rather intricate, and, in any event, elaborate and able arguments, we are satisfied to announce the conclusion that in every respect to which our attention has been called, save as above indicated, the decree of the lower court was right. The case is remanded for such modifications of the decree as are necessary to bring it into harmony with this opinion.

*Affirmed* on plaintiff's appeal; on defendant's appeal *modified* and *remanded.*