G. A. PUTBREES, Appellee, v. FREDERICK P. JAMES, et al., Appellants, (and Three Other Cases).

**Wills:** CONSTRUCTION.   The law favors the vesting of estates at the 1   earliest possible period, in the absence of a clear manifestation of the testator's intention to the contrary; and in cases of doubt the law favors the fee rather than the lesser estate.

**Same:** VESTING OF ESTATES.   Under a will bequeathing one half of 2   testator's income to his wife for life, together with the occupancy of residences, and to his legal heirs the remainder of the income during the life of the wife, with the reversion and ownership in them after her death, and with direction to his executor to sell such property as might be required to pay his debts, the legal heirs took the fee title to the real estate at once with enjoyment deferred until his wife's death.

**Same:** SALE OF INTEREST BY DEVISEE: ESTOPPEL.   Upon a sale and 3   receipt of the consideration of all their interest in testator's real

estate devised to them, the devisees and their grantors were estopped from claiming any further interest in the property.

Same: WIDOW'S ELECTION: EVIDENCE. While a widow's election to accept the provisions of her husband's will in lieu of a distributive share could be made a matter of record as required by the former statute in different ways, proof of an unrecorded referee's report filed in a foreign state, showing that the widow as trustee rented lands in this state, and that she occupied property of the estate and acted as executrix was not sufficient to show such an election.

Real property: QUIETING TITLE: COLOR OF TITLE: ADVERSE POSSESSION. Where the widow, having a life interest in the income from testator's property, and his legal heir holding the fee, conveyed their interests in the real estate, and a decree quieting the title was entered in favor of the grantee, in a suit to which they were all parties, one holding under such grantee with occupancy for fifteen years held color of title, and was entitled to a decree quieting the title in him as against the heirs of the testator.

*Appeal from Dickinson District Court.*—HON. D. F. COYLE, Judge.

SATURDAY, DECEMBER 13, 1913.

ACTION in equity to quiet title to three hundred twenty acres of land in Dickinson county, Iowa. Three other cases were tried with this. Decree for plaintiffs. Defendants appeal.—*Affirmed.*

*McCarty & McCarty,* for appellants.

*Francis & Owens* and *Faville & Whitney,* for appellee.

PRESTON, J.—Many parties were made defendant, most of whom defaulted. Relief was asked against unknown claimants. Defendants contesting, and who are the appellants, are some of the brothers and sisters of Frederick P. James and their children and grandchildren.

Frederick P. James died, testate, in May, 1884. His will was admitted to probate in New York in September, 1884,

and in Dickinson County, Iowa, in May, 1891. The will is as follows:

I, F. P. James, of Phillipstown, Putnam county, New York, being of sound mind, declare this my last will and testament, revoking all former wills and codicils.

I give and bequeath to my beloved wife Julia, for her sole use, enjoyment and benefit, during her life, without restraint, deduction or interference in any manner whatsoever, as follows:

First: One-half the income of all my property of every kind of which I may die possessed.

Second: The use, enjoyment, rental and occupation of my two residences, one known as Cragside in Cold Spring and Phillipstown, New York, and the other known as No. 400 Fifth Avenue, New York City.

Third: I give, devise and bequeath absolutely to my said wife all the household furniture, pictures, plate, books, ornaments, horses, carriages, farm implements and property of every description in or upon or appertaining in any manner to the two houses and residences aforesaid. The said devises and bequests to my said wife to be in lieu of dower and right of dower.

I give, devise and bequeath to my legal heirs the remainder of the income from my property during the life of my wife, after the payment and discharge of all taxes, assessments and charges, interest and obligation against my said estate, except as hereinafter provided in case of interference. I give, devise and bequeath to my legal heirs except as herein provided otherwise, the reversion and ownership of all my estate and property after the death of my wife, with the reservation, exception and direction that in the event of any of my legal heirs making any attempt directly or indirectly in any manner or form, to interfere with or restrain in any manner my beloved wife from the full enjoyment, use, management and direction and disposition of the property and income of my estate as herein devised, then in that event such one of my legal heirs as shall do or perform, or aid or abet the performance of such an act, or cause the same to be done, shall be forever debarred from any part, parcel, interest or ownership, or inheritance to any of my property, and be excluded from shar-

ing in the same, and the share that would otherwise have gone to him or her shall be divided among the remaining heirs according to law.

I authorize and direct my executrix, in her discretion, to sell and convey such portion of my property as may be requisite or necessary to pay and discharge my just debts and obligations. I constitute and appoint my wife, Julia L. James, my sole executrix, and direct that no bond, obligation or surety be required from her.

At the time of his death, testator owned the land in controversy, and other lands in other counties in Iowa and in other states. He left no children, and no father or mother; his wife, Julia L. James, who afterwards married one Daniel Butterfield, alone surviving him. His collateral relatives were two sisters and one brother, a son of a deceased sister, a daughter of a deceased brother, and children and grandchildren of another deceased brother. The one brother who was living at the death of testator died in 1886; his will gave his executors full power to sell the property of his estate, which they did to grantors of plaintiff. All the heirs of Frederick P. James, including his widow and her husband, and the wives and husbands of said heirs, have joined in conveyances of their interests in the real property in controversy to various parties who have, through various conveyances, transferred the same to this plaintiff. The conveyances by the heirs were subject to the rights of the widow, and were made before the deed by the widow hereafter referred to. The appellants are some of those who thus conveyed their interests, except perhaps a grandchild of one of the heirs. Some time prior to November 26, 1895 (the date of the commencement of the suit does not appear), the widow, Julia L. Butterfield, commenced a suit against the heirs, and others, in the district court of Iowa, in and for Osceola county. Due notice was served on all parties. A decree was rendered November 26, 1895, in which the court found that said plaintiff was at the time of the commencement of the cause the owner and entitled to the undivided one-third in fee to all the

lands described in the petition, which included the land in controversy, and that the defendants (naming them) were, when the action was commenced, the owners of the undivided two-thirds of said lands. The Wisner Land Company, a grantor in plaintiff's chain of title, was a party to that action, and answered, alleging that it had, since the commencement of the action, purchased all of the interest of all the defendants, and the interest of the plaintiff in such lands, and asked that its title be quieted. The court found in the decree that the Wisner Land Company had, since the commencement of the action, purchased all the interest of the defendants and the plaintiff. The decree recites: "And that the title in and to said lands, and all and every part and portion thereof, be quieted and established in said Wisner Land Company, and that all of the said parties plaintiffs and defendants, and all persons claiming by, through or under them, or any of them, be estopped and forever barred from claiming the same or any part thereof." This decree was recorded in Dickinson county, Iowa, December 19, 1895. May 23, 1895, the widow, Julia L. Butterfield, and husband, executed a deed to the Wisner Land Company, for the consideration of $20,000, conveying all the right, title, and interest acquired and owned by her as the wife and widow of Frederick P. James in and to the lands described (being the lands in controversy, and other lands), together with the appurtenances and all the estate and rights of the party of the first part, individually, in and to said premises. The deed provides that it is not to affect her rights as executrix or trustee under the will of her deceased husband. The husband, Daniel Butterfield, joined in the deed, and relinquished all his rights in the property. This deed was duly recorded. A referee's report, filed in court in New York, shows that the widow, as trustee, rented all lands in Iowa to the Wisner Land Company on May 24, 1895, for a rental equal to the taxes on the land. This report was not made by the widow, but she was served with notice thereof. This report was not produced or

offered in evidence. It was testified to by witness Carpenter, and it was agreed on the trial that it did so show, but subject to objection that it was secondary, not binding on plaintiff, etc.

Plaintiff obtained his title in 1895 by deed, and it was conceded of record on the trial that: "Subject to such legal exceptions and objections as may hereafter be made by the defendants, it is agreed of record that the plaintiff herein and his grantors have held open, notorious, and continuous possession of all of the premises in controversy herein under and by virtue of the color of title created by the execution and recording of various instruments of title on record, and also with claim of right to said premises, and said possession by plaintiff and by and through his grantors has been peaceable, quiet, and uninterrupted during a period of more than fifteen years prior to the commencement of this action. And that while so occupying said premises plaintiff and his grantors have erected various improvements thereon, consisting of plowing and improving the land, fencing same, erecting house, barns, sheds, granaries, and so forth." It was also conceded that plaintiff and his grantors have paid the ordinary taxes levied upon the lands in controversy during all of the period since the purchase thereof from the defendants, as shown by the instruments.

May 21, 1907, Edward F. James, executor and trustee, Ella E. James, executrix and trustee, Edward F. James, Ada L. James, Ella E. James, and W. L. James executed a deed to Frazier Gilman and Oliver C. Carpenter, covering the lands in controversy, and purporting to convey an interest in the property in question, and the deed contains this language: "Subject to any legal conveyance of any portion of said premises heretofore made." A similar deed was executed by another party at about the same time, but appellants say they make no claim under this last-named deed. The deed of May 21, 1907, is the cause of the trouble. Appellants claim that they have an interest under this deed, and also claim

that the title did not vest in the heirs at the death of Frederick P. James, and will not until the death of his widow. Plaintiffs say that these parties in this deed had parted with all their interest in the property, and that they are estopped by their former conveyances, and by the decree in Osceola county; that the deed in question conveyed nothing, and, as we understand it, defendants concede this to be true, if the title vested in the heirs of Frederick P. James, at his death, and if the widow did not elect to take under the will. It is appellant's contention that the widow did elect to take under the will, while plaintiffs claim that she failed to so elect, and that, under the will as it then stood, she was entitled to and did take her dower or distributive share.

These are the principal facts in the case. Plaintiff claims that he has acquired all the interest of all the heirs of said Frederick P. James; that the defendants are estopped from making any claim to said premises, or any part thereof; that the claims of defendants are barred; that he has held possession adversely for more than ten years; that the conveyances made by the executors or trustees under foreign wills were legalized by chapter 182 of the Acts of the Twenty-seventh General Assembly, and other legalizing acts by the Legislature of the state of Iowa.

The defendants claim that plaintiff is not entitled to decree quieting title at this time because the title is subject to the life estate of Julia L. Butterfield, who is still living, and, the life estate not having terminated, the heirs who are to take, or their rights or interest, are not ascertainable or sufficiently fixed to warrant a decree in this case at the present time; that there is an undivided interest in the premises, still unconveyed, belonging to the defendants; that the widow has elected to take under the will, and that, having renounced her dower, she would have no dower or distributive share or interest in the lands aside from her life estate; that any claim of the widow to dower is barred by the statute of limitations; that the statutes of limitations and adverse possession do not

apply to this case and to these defendants for the reason that where there has been a conveyance by the life tenant, there can be no adverse possession as to the remainderman or reversioner during the lifetime of the life tenant.

The plaintiff's claim at this point is that the widow did not convey a life estate or any of her interest under the will, but only her dower, or one-third interest, which was set off to her in the decree, and that such decree and prior conveyances gave the plaintiff color of title as early as 1895, and that his possession since that time is and has been adverse.

I. The law favors the vesting of estates at the earliest

1. WILLS: construction.

possible period, in the absence of a clear manifestation of the intention of the testator to the contrary, and in case of doubt the law favors the fee rather than the lesser estate.

We are not to construe this will in all its parts and the rights of the parties as to personal property, but only as it affects the real estate in question. After providing for the

2. SAME: vesting of estates.

wife, and disposing of the income from the property, the language of the will is: "I give, devise and bequeath to my legal heirs, except as herein provided otherwise, the reversion and ownership of all my estate and property after the death of my wife," etc. The language used indicates an intention to vest a present interest, in this real estate, in his legal heirs. His legal heirs are those who would take in case of intestacy, and in the proportions prescribed by the statute. There is nothing in the will to indicate an intention to postpone the vesting of his estate in his heirs, and that the distribution shall be among those who survive the widow. True, the fee is subject to be defeated by the exercise of the limited power to sell, or for interference by any of the heirs. The enjoyment of the estate by the heirs is postponed until her death, but not the vesting of the title.

We are not called upon to determine the interest of the widow, for she is not contesting in this action. Whether she

is a trustee, or whether she could, under this record, still exercise any control over the real estate in controversy, under the will, we need not determine. It is claimed by appellants, and seems to be admitted by appellees, that She has a life estate in this realty. This is doubtless true as to some of it at least. She has conveyed a one-third interest in the land now in controversy, and the heirs have conveyed two-thirds and all their interest.

In our opinion, the decision must turn on, and be controlled by, the question of adverse possession, which will be referred to later. The question is, Is plaintiff entitled to have his title quieted as against the defendants? They, or their grantors who were heirs of deceased at the time of his death, sold and conveyed all their interest in the land and have received the money therefor. The plaintiff has pleaded an estoppel, and that the claims of the defendants are barred; that such estoppel is binding on the heirs and all persons claiming from them. The widow did not convey a life estate or any interest she acquired under the will. The defendants are not now, so far as this land is concerned, interested or concerned in what her interest was. Their conveyances are subject to her rights, but they parted with all their interest. They cannot now claim it again for themselves, nor can their subsequent grantees claim anything by reason of such subsequent conveyances.

3. Same: sale of interest by devisee: estoppel.

II. Defendants contend that the widow elected to take under the will; that such election was made in the state of New York; and that such election was binding, and that she could not thereafter elect to take under the law; that for this reason and the further reason that her claim for dower, or distributive share, was barred by the statute of limitations, she could not claim dower in these lands. The laws of New York were not pleaded nor proven; the presumption is that they are the same as in Iowa, and for this reason and because the devolution of title is to be determined

by the laws of the state where the real estate is situated, the laws of Iowa control.

Plaintiff claims that the widow elected to take her distributive share under the law, and that she did so take, and was decreed to be the owner of one-third.

First, as to the alleged election. The facts relied upon by defendants by which they claim that the widow elected to take under the will are testified to by one Carpenter. He was the only witness in the case for either side.

4. SAME: widow's election: evidence. He says he was not personally acquainted with Frederick P. James; that he is slightly acquainted with the widow; that he has attended the accountings of the widow as executrix; that she reported that she had leased the Iowa lands and the Texas lands, giving a life lease; that she had rented the property, reporting the rents and profits to the court; that previous to 1894 she leased the Iowa lands through an agent, and accounted for the rents collected, and paid the taxes in Iowa. After 1894 she reported as having leased to the Wisner Land Company, who paid the taxes; that she has done the same with the Texas land up to 1894. He says further:

I do know that she took possession and occupied the residence at 400 Fifth Avenue until after her marriage with Daniel Butterfield, when she leased it for her own account. She has occupied Cragside as a summer residence from 1884 until last September, 1910, and she was there at that time, and she continues to occupy Cragside as a summer residence, and has a residence in New York during the winter. I know that she publicly disclaims any right of dower or interest in any land in Iowa, New Hampshire, Texas, or New York. Q. Do you know whether she has ever accepted the provisions of this will in lieu of dower? A. I don't know. That was long prior to my acquaintance with them, but I understand she did. (On cross-examination he testified) : I am sixty-one years old. I was not acquainted with Frederick P. James' mother, nor with his father, nor his stepmother, and my knowledge of the fact that Frederick P. James' father having been twice married is from what I have heard, and from the death being

recorded in the cemetery, and seeing the headstones. Q. You made the statement that Mrs. Butterfield publicly disclaimed dower in the state of Iowa. How do you know she did? A. She admitted in the accountings before the referee to my knowledge, four or five years ago, and again about ten years ago. Q. That is the basis of your statement, is it? A. Yes, sir; that is the basis. Plaintiff moves that the answer of the witness with reference to Mrs. Butterfield having made public disclaimer of the Iowa lands be stricken out as a conclusion of the witness and hearsay, and not the best evidence, and wholly immaterial, and not the legal or proper method of so disclaiming, nor the proper time of so disclaiming, and as wholly immaterial, and in no manner binding on the plaintiffs herein.

The foregoing evidence was all properly objected to as incompetent, hearsay, and secondary. Much of it is so. The substance of the competent evidence is that she occupied the two New York houses and acted as executrix under the will. Whether she elected to take under the will or law depends on the law of election under the statute as it stood prior to the Code of 1897. The will provides that what it gives her is in lieu of dower. That the widow acted as executrix under the will would not amount to an election. That she occupied the two houses in New York under the provisions of the will would be evidence tending to show an election. No notice was ever served upon her requiring her to elect. Under the authorities, there may be an election by a widow without such notice if the evidence is such as to clearly show the fact. Under the statute as it then stood, the widow's share could not be affected by the will of her husband unless she consented thereto, "which consent shall be entered on the proper record of the circuit (district) court." McClain's Code, section 3656 (section 2452, Code of 1873).

Such consent may be made of record in different ways. The cases on this point are reviewed in *Mohn v. Mohn,* 148 Iowa, 288. In that case the widow was appointed executrix, and in a report made and filed by her, which was made of

record, statements were made which were held sufficient to constitute an election. In the instant case the matter relied upon by appellants to show that the election was made of record is the matter heretofore referred to; that a referee's report, filed in New York shows that the widow, as trustee, rented all lands in Iowa to the Wisner Land Company in 1895. It was not sufficient to file it in New York, and it was not made by the widow; there is no evidence that it was recorded anywhere.

In one case (*Koep v. Koep*, 146 Iowa, 179), it was held that the widow may be estopped by her conduct, relied upon by others interested in the estate, from asserting her right to distributive share, regardless of any formal election. And the evidence was held sufficient in that case to sustain the estoppel. But in the case at bar there is no evidence that the defendants relied upon the acts of the widow as constituting an election by her to take under the will, or that they in any manner changed their position to their prejudice. It is not shown that they even knew of it. None of them testified as witnesses. On the contrary, they were made parties to a suit brought by the widow, in which she claimed under the law, and not under the will, and in which she was decreed to be the owner of one-third of these lands, and the heirs were decreed to be the owners of two-thirds of it. Plaintiffs claim that by this suit the widow elected to take under the law. The case is peculiar in this respect, and, because of the facts, we think the question as to the alleged election either way is not controlling. Whether plaintiff in that action was entitled to one-third and the heirs to two-thirds, or whether defendants in that case, who are also defendants in this, could have defended on the ground that she had, prior thereto, elected to take under the will, or whether her claim to dower was barred, is not in this case.

Defendants did not defend the first action on either ground, but allowed the decree to be entered, afterwards sold and conveyed all their interest, and the widow also sold and

conveyed her one-third so decreed to her. The defendants claim, and their witness Carpenter so testified, that the widow had leased the Iowa lands and the Texas lands, giving a life lease, in 1894, and the report filed by the referee in New York shows substantially the same. This was at about the time she conveyed her one-third interest decreed to her by the court in Osceola county, and if such facts are competent and are to be considered, they would indicate that she made no further claim to this land after about 1894 or 1895.

III. Without repeating the facts heretofore set out, we are of the opinion that the various deeds from the widow and heirs, and the decree of the district court in Osceola county, the quieting title in the Wisner Land Company, one of plaintiff's grantors, in that action, and the conveyances thereafter, gave plaintiff color of title, and that the statute of limitations then commenced to run. Plaintiff's occupancy thereunder for fifteen years, as conceded in the record, entitles him to a decree. Such was the decree in the district court in all four of the cases appealed.

5. REAL PROPERTY: quieting title: color of title: adverse possession.

The decrees are therefore—*Affirmed.* All the Justices concur.