ALLISON W. JACKMAN et al., Appellees, v. JACKMAN HERRICK et al., Appellants.

**WILLS: Construction—Operative Effect on Lands—Lex Loci Rei**
**1 Sitæ.** As to real property, the operative effect of a will and the rights of parties thereunder must be determined by the laws of the state where the real property is situated, *irrespective of the laws of the state where the will was executed and where testator resided.*

PRINCIPLE APPLIED: A resident of New Hampshire executed his will in 1873. He devised lands in Iowa and other states. He devised a life estate in all his property to his wife. Had the lands in Iowa been situated in New Hampshire, the wife would not have been entitled to dower therein. Testator died in 1877, still a resident of New Hampshire. His will was probated in said state in 1877, and in Iowa in 1914. *Held*, the operative effect of the will, as to the Iowa lands, must be governed by the 1873 Code of Iowa (Secs. 2440, 2452), and that thereunder the wife became vested with her distributive one third.

**DOWER: Right of Surviving Spouse—Taking Under Both Will and**
**2 Statute.** A widow, on the death of her husband, became vested, under the Code of 1873 (Secs. 2440, 2452), with her one-third distributive share in the real estate of her husband, notwithstanding the will of the husband devising her a life estate in all his property, without other words of limitation or condition.

**WILLS: Election—Election Between Devise and Distributive Share.**
3    Assuming, *arguendo*, that a widow, under Code, 1873 (Secs. 2440, 2452), was put to an election whether she would take the devise of a life estate in lieu of her distributive share, such election is not established by showing: . (a) that until her death she enjoyed the benefits of such life estate; (b) that until her death she acted as executor of her husband's estate; and (c) that after her death her executors filed, in a foreign state, and in a nonprobate court, and in some proceeding the nature of which is not shown, an alleged statement of account of the widow as executor of her husband's estate, tending to show that she took under the will and not under the statute, such latter act not being a matter of record *made by her*.     .

**WILLS: Election—Election Between Devise and Distributive Share—**
4    **Estoppel.** The conduct of a widow in enjoying, during her lifetime, the benefits of a life estate in real estate, under her husband's will, does not work an estoppel on her devisees to assert that the widow became vested, under the Code of 1873 (Secs. 2440, 2452), with a fee simple title to one third of the husband's real estate as a distributive share.   ,

**PLEADING: Amendments—Amendment After Decree—Partition.** In
5    partition proceedings, amendments claiming a larger share in the property than claimed in the original petition, are allowable even after interlocutory decree fixing the relative shares in accordance with the original petition; and, ·in the light of such amendment, the court may, in the interest of justice, set aside such decree and open.up the hearing on the enlarged prayer.

**JUDGMENT: Setting Aside—Sufficiency of Showing—Mistake—**
6    **Negligence.** A decree may be set aside even though the mistake which necessitated the application to set aside might have been avoided, and even though there was some measure of negligent delay in making the application after the mistake was discerned.

*Appeal from Kossuth District Court.—*D. F. Coyle, Judge.

Saturday, January 20, 1917.

This is an action in equity, to partition about 900 acres of land situated in Iowa in the counties of Kossuth, Humboldt, Webster and Pocahontas, formerly owned by David K. Jackman, who died testate on July 16, 1877, a citizen of the state of New Hampshire. The will was executed in that

state May 30, 1873. The will of the widow, Seraphina R. Jackman, was executed in September, 1908. Two codicils to her will were executed, in 1910 and 1913. As we understand it, her will and the codicils were executed in the state of New York, of which state she was a resident, and she did not remarry. The questions urged by appellants on the appeal are whether, under the facts in the case, Seraphina R. Jackman, also referred to in the record as S. R. Jackman, widow of David K. Jackman, under whose will the rights of the parties arise, took only a life estate in the land in question, or whether, in addition to the life estate devised by her husband's will, she took also a one-third dower interest in the lands, which her devisees can now claim. The widow died testate January 23, 1914. Plaintiffs claim that she took one third of the land in controversy in addition to the life estate provided for her by the will, and that, by her will, this one third was given to the plaintiffs. The issues were decided in accordance with plaintiff's contention, and partition by sale was ordered. The defendants appeal.—*Affirmed.*

*Herrick & Herrick*, for appellants.

*Sullivan & McMahon* and *E. A. & W. H. Morling*, for appellees.

PRESTON, J.—We have already stated briefly the claim of plaintiffs. The answer of defendants claims that Mrs. Jackman, the widow, took a life estate only, and that the remainder went to the devisees in the will of David K. Jackman. The answer further alleges that Mrs. Jackman acted as executrix of her husband's will up to the time of her death, and during that time never made any claim to any interest other than the life estate, and during that time received all the rents and profits; that, when the will of David K. Jackman was made, he was a citizen of New Hampshire, and that, under the law of New Hampshire, his widow was

1. WILLS: construction: operative effect on lands: *lex loci rei sitæ.*

not entitled to dower in this land, and that the will should be construed according to the laws of New Hampshire; that, in the original petition herein, the will was construed as not covering any interest in the widow other than the life estate, and that a decree was obtained thereon, and that the plaintiffs are thereby estopped; that the plaintiffs Allison W. Jackman and Frank Hasbrouck, executors of the will of the widow, charged against the defendants their full proportionate share of their expenses connected with the Iowa land, and that plaintiffs are estopped. In plaintiffs' reply, they allege that the original petition was drawn by plaintiffs' attorneys on inadequate information, without knowledge of the will of the widow, and that, because of their mistake, the interlocutory decree thereon was vacated by the court, and that plaintiffs' attorneys had no authority to file a pleading which would in any way waive or modify the plaintiffs' interests in the property.

There is but little, if any, conflict in the testimony, although there is some controversy as to the competency of some of the evidence. Some of the persons named in the will of Mr. Jackman have since deceased, but it is unnecessary to a determination of any question raised here to set out their heirs or their wills. Some of the parties are husbands and wives of those interested in the estate.

The will of David K. Jackman was admitted to probate in New Hampshire, August 13, 1877, and in Kossuth County, Iowa, September 14, 1914. He died seized of lands in the states of New Hampshire, Pennsylvania, Illinois and Iowa. His will provides:

"I. I give, devise and bequeath all my real and personal estate of every kind and description wherever found and however situate to my beloved wife, S. R. Jackman, for her use and enjoyment during her natural life, and after her death all the remaining property is to go to my beloved children, viz.:

(He then names the children, and continues.)

"But in case my aforesaid wife, S. R. Jackman, shall remarry, then she shall have one third of the net income of all my real and personal estate in lieu of the bequest aforesaid, and after her decease said third of the income of my real and personal estate shall go to my children aforesaid."

The widow was appointed executrix, along with another, and qualified, and continued to act until she became sole executrix, and until her death she acted as executrix, from 1877 to 1914, a period of thirty-six years. At her death, an administrator, with the will annexed, *de bonis non,* was appointed in the David K. Jackman estate, and Allison W. Jackman and Frank Hasbrouck, the executors named in her will, were appointed as executors of her estate. This last appointment was made in New York, in May, 1914, and in Iowa in September, 1914. During her life, the widow continued to receive all the rents and profits from the David K. Jackman estate, and she made many expenditures for said estate, some of which were for attorneys' fees and expenses in quieting title in David K. Jackman and his estate,—some of which actions were before Mr. Jackman died, and one after,—and for taxes, etc. It seems that no part of such expenses were charged to the widow.

At the time the will of David K. Jackman was made and probated, the laws of New Hampshire provided:

"No widow shall be entitled to any dower in any lands, unless the same were, during the marriage and seizin of the husband, in a state of cultivation, or were used or kept as a wood or timber lot, and occupied with some farm or tenement owned by the husband.

"The widow of any testator deceased leaving lineal descendants, if there is no settlement nor any provision made for her in his will, or if she shall waive such provision, shall be entitled, in addition to her dower and homestead, to a portion of the personal estate equal to that which a child would receive if such estate were equally shared between the

widow and the children then surviving or leaving issue, not exceeding in any case one third of such estate.'' Gen. Stat. of N. H., 1867, Ch. 183, Secs. 3, 12.

Plaintiffs objected to the introduction of the New Hampshire statute, on the ground, substantially, that the action involves real estate situated in the state of Iowa, and that the laws of New Hampshire are immaterial, because the rights of the parties to lands situated in Iowa must be determined by the laws of this state. It is conceded that none of the lands referred to in this action were in a state of cultivation or used or kept as wood or timber lots, etc., during the lifetime of David K. Jackman.

There were numerous provisions in the will and codicils of the widow, and a residuary clause by which the widow bequeathed and devised all the rest, residue and remainder of her property, of every name and nature, to her surviving children, naming them. These parties so named are plaintiffs in this action. The will of the widow was admitted to probate in the state of New York in 1914.

It will be necessary to set out some other facts in regard to the account of the executors filed in the courts of the state of New York, and the effect of such report; also in regard to the amendment to the petition and the setting aside of the interlocutory decree; but, to avoid repetition, these matters will be referred to in discussing the points argued in reference thereto.

1. It is conceded, as it must be, of course, that the intention of a testator must govern in the construction of his will. It is contended by appellants that, in ascertaining the intention of a testator, courts are not confined to an examination of the will alone (citing *In re Estate of Freeman*, 146 Iowa 38, at 44.) The larger part of the argument—and this seems to be appellants' principal contention in the case—is that, in determining whether the widow took a one-third interest in addition to the life estate, the laws of New Hampshire control. Appellants contend that the intention must

be ascertained by a construction of the will under the laws of the domicile of the testator. In support of this proposition, they cite: 40 Cyc. 1382, and cases cited; *Bedell v. Clark* (Mich.), 137 N. W. 627; *McCurdy v. McCallum* (Mass.), 72 N. E. 75; *Waters v. Bishop* (Ind.), 24 N. E. 161; *Kingsbury v. Bazeley* (N. H.), 70 Atl. 916; *Ball v. Phelan* (Miss.), 49 So. 956; *Hays v. Martz* (Ind.), 90 N. E. 309; *Jacobs v. Whitney* (Mass.), 91 N. E. 1009; *Houghton v. Hughes* (Me.), 79 Atl. 909. They say that, under the laws of New Hampshire, as proven in this case, no dower is allowed in lands of this kind, and that, therefore, the testator did not intend to give his widow more than a life estate.

On the other hand, it is contended by appellees that, as to real property situated in Iowa, the construction of this will and the effect of the provision in favor of the widow, whether it is in addition to or in exclusion of distributive share, must be determined by the laws of the state of Iowa and without regard to the laws of New Hampshire. They cite: *Acker v. Priest*, 92 Iowa 610, 616; *Jennings v. Jennings*, 21 Ohio State 56; *De Vaughn v. Hutchinson*, 165 U. S. 566, 570; *In re Estate of Washburn* (Minn.), 20 N. W. 324; *Van Steenwyck v. Washburn* (Wis.), 17 N. W. 289, 296; *Appeal of Clarke* (Conn.), 39 Atl. 155; *Jacobs v. Whitney* (Mass.), 91 N. E. 1009, 1011; *Pratt v. Douglas*, 38 N. J. Eq. 516; *Van Wickle v. Van Wickle* (N. J.), 44 Atl. 877; *Minot v. Minot*, 45 N. Y. Supp. 554. See also *Putbrees v. James*, 162 Iowa 618, 626 (bottom). They cite the same cases, and *Lyndon Lbr. Co. v. Sawyer* (Wis.), 116 N. W. 255, *Nelson v. Potter* (N. J.), 15 Atl. 375, to the point that the laws of New Hampshire have no operation upon, and the courts of New Hampshire have no jurisdiction of, the title of lands in Iowa. And they quote from *McGoon v. Scales*, 9 Wallace (U. S.) 23, 27:

"It is a principle too firmly established to admit of dispute at this day, that to the law of the state in which land is situated, must we look for the rules which govern its de-

scent, alienation and transfer, and for the effect and construction of conveyance.''

They also cite, in support of this proposition, the further cases of *Lynch v. Miller,* 54 Iowa 516; *Robards v. Marley,* 80 Ind. 185; 32 Cyc. 674; 40 Cyc. 1384; and some of the cases before cited.

We shall not attempt a review of these cases, because we regard the law as settled in this state, and in accordance with plaintiffs' contention, as to the real estate now in question. It may be that in some cases, as to the construction of a word or a phrase in a will, as to testator's intention, the law of the state of the domicile of deceased should control. Appellants cite on this proposition, among other authorities, 40 Cyc. 1382; *Keith v. Eaton* (Kans.), 51 Pac. 271.

The citation from Cyc. just given has reference, for the most part, to personal property, although it is said that, so far as concerns the ascertainment of the testator's intention, this rule applies even though the will disposes of real property; and it is further said in the same connection, at page 1383:

''But as to the operative effect of the will, and the rights of the parties thereunder, its construction as to personalty is governed by the law of the testator's domicile at the time of his death, and as to the disposition of real estate, or the creation of any interest therein, by the law of the place where the property is situated.''

It is thought by appellants that the fact that testator lived in New Hampshire, and was presumably familiar with the laws of that state, is a circumstance to be considered as bearing upon the question of his intention. But the force of this is weakened by the fact that testator owned lands in three other states, where the law as to a widow's dower rights might be entirely different from the law of New Hampshire; and it is so in Iowa. But, after all, it is not so much a question, in the instant case, as to the construction of the will, which seems to be plain, but as to its effect in Iowa on lands

in Iowa. The New Hampshire statute refers only to lands in New Hampshire. There is nothing to show that testator had any purpose, in making his will, to have the rights of his widow to lands in Iowa determined by the laws of New Hampshire.

It should be borne in mind that, in the instant case, it is a question of the devolution of title to lands in Iowa. The question is whether, under the will of David K. Jackman, and under the law as it existed at that time, the widow is entitled to take one third of the real estate in addition to the life estate, or whether she takes only a life estate, with the remainder over to persons named in the will of David K. Jackman; and as to such question, and as to the estate or title the widow takes under the will and law, the laws of Iowa control. Some of the cases cited by appellants hold that the rule is as they contend in regard to personal property, but that the rule is not the same in regard to real estate. This is doubtless for the reason that the situs of personal property is ordinarily supposed to be where the owner has his domicile. This is doubtless on the theory that, if he does not have the actual possession of it at his domicile, he will ordinarily be able to obtain possession of it. But such is not the case in regard to real estate. We are of the opinion that the trial court rightly determined this point.

2. The effect of this will must be determined by the Code of 1873. We do not understand appellants to contend otherwise. The authorities hold that, under the statute as it then was, such a will as this, devising a life estate to a widow, is not inconsistent with her right to take her statutory third.

2. Dower: right of surviving spouse: taking under both will and statute.

Appellee cites on this point: *Thorpe v. Lyones,* 160 Iowa 415; *Parker v. Parker,* 155 Iowa 65; *In re Stevens' Estate,* 163 Iowa 364; *Archer v. Barnes,* 149 Iowa 658; *Warner v. Hamill,* 134 Iowa 279; *Byerly v. Sherman,* 126 Iowa 447; *Arnold v. Livingston,* 157 Iowa 677. They say, too, that, though there were inconsistency between the

devise of the life estate and the right to take her statutory third, Mrs. Jackman's right to her one third could not be affected by the will unless she clearly and unequivocally consented thereto, and that such consent must be made a matter of record; that no declaration or act of hers relative to the property short of statutory election, could operate to deprive her of her distributive share, citing again some of the cases just cited.

The enjoyment by her of the life estate did not constitute an election to take under the will. On this, appellees cite *Byerly v. Sherman,* supra; *In re Stevens' Estate,* supra; *Thorpe v. Lyones,* supra.

3. WILLS: election: election between devise and distributive share.
The fact that the widow acted as executrix is not sufficient to constitute an election. *Putbrees v. James,* 162 Iowa 618, 628.

We have held that the widow's election may be made in different ways, but that it must be made of record in some way, unless the facts are such that she is estopped. See cases cited in *Putbrees v. James,* supra.

It is thought by appellants that the will in the instant case was such that the widow was put to her election whether she would take a life estate under the will, or a third under the law. This we do not determine, because, conceding it to be true, the facts relied upon by appellants as constituting such election are not sufficient. The facts relied upon by appellants as constituting such election were acts of the executors of her will in a report filed by them, setting up an account of the widow as sole surviving executrix of the will of her husband. This account set out the dealings of said widow with the estate. In the account referred to, it appears that the title to the Iowa lands was quieted in Mr. Jackman or his estate, some before Mr. Jackman died, and one piece after he died, and that the expense of this last action was paid by Mr. Jackman's estate. The other expenses in connection with such actions were also paid by the estate. It is further stated in the account that all these lands were still

in the possession and vested in the estate of David K. Jackman at the time of the death of the widow. There is also a showing of the account of the widow as executrix for moneys paid for taxes upon the lands, for drainage assessments and for improvements. This account was sworn to by Allison W. Jackman and Frank Hasbrouck, as executors of the will of the widow. The will of Mr. Jackman was probated in New Hampshire, and that of Mrs. Jackman in the surrogate's court of Duchess County, New York. The account upon which defendants rely was not filed in either of these courts. What the complaint or purpose of the action was in the action pending in the Supreme Court of New York is not shown. It is not shown how the alleged account came to be filed,— whether it was an exhibit to a pleading or offered in evidence. No judgment or decree in the supposed action is shown, or that any action was taken by the court. The supposed account purports to be the statement of the executors of the will of the widow, and states that:

"They submit the same to this court with all other knowledge obtained by them from other sources, in order that this court may ascertain and fix the amount of estate now on hand, and with which these plaintiffs should be charged as executors of Seraphina R. Jackman."

The executors state:

"Concerning some of these entries they have no personal knowledge, but they submit them to the court, and upon information and belief they will say that said disbursements were actually made for the benefit of the estate, and that the court, in ascertaining and fixing the amount of the estate of David K. Jackman in the hands of the plaintiffs herein, as executors, should give due and proper credit for such disbursements."

The estate of David K. Jackman was never settled during Mrs. Jackman's lifetime. Taxes were paid, but it does not appear what the total amount of taxes was, nor what Mrs. Jackman's purpose was in paying them or in making settle-

ment with her co-tenants or the estate in respect to them, nor is there any showing whether or not Mrs. Jackman made any charges against the estate or against the other heirs, or what she did or intended to do in these respects. There is much more in the report of similar transactions, but the report was not made by the widow, and is not a record entry of any act of the widow by which there was any election on her part.

The account appears to be a report by the executors of the widow as to her personal property, and to fix the amount with which the executors should be charged. Clearly, this does not show an election by the widow made of record. We held, in *Putbrees v. James*, supra, at page 629, that the filing of a referee's report in New York was not sufficient to show an election by a widow in regard to lands in Iowa, and that it was not proper that such an election should be made in the courts of New York. We said:

"It was not sufficient to file it in New York, and it was not made by the widow; there is no evidence that it was recorded anywhere."

The facts before stated do not constitute an estoppel, nor does the record show anything in the conduct of the widow or her devisees which constitutes an estoppel. See

4. WILLS: election: election between devise and distributive share: estoppel.

*Putbrees v. James*, supra, and cases therein cited. See also *Irish v. Steeves*, 154 Iowa 286, 292, *Archer v. Barnes*, supra, *Byerly v. Sherman*, supra, *Thorpe v. Lyones*, supra, to the point that no estoppel can be predicated of the widow's enjoyment of the life estate, even though she does not claim her right to a distributive share.

3. Though we do not understand appellants to make the point, it has been held that the rights of the widow to her third may be asserted by her devisees, the plaintiffs. *Thorpe v. Lyones*, supra; *Archer v. Barnes*, supra; *Parker v. Parker*, supra.

4. The original petition claimed a smaller share for

plaintiffs than was finally determined to belong to them. No defense was made to the petition as originally drawn. A

**5. PLEADING: amendments: amendment after decree: partition.**

decree was entered, fixing the shares of the different parties in accordance with the original petition. Later, plaintiffs filed an amended petition, claiming a larger share, and asking that the decree be set aside, and an application to set aside the decree and to expunge it from the record. Notice of this application was given to the defendants, and they appeared in response to the notice; and, after a hearing, the application was granted. A showing was made as to how the mistake occurred, and the court set the decree aside, and the case was fully tried on the merits as to the claims of the plaintiffs under the issue presented by their amended petition.

·Appellants now complain' that, under the record, it was error to set aside the original decree and allow the amendment, claiming that there is no sufficient showing to warrant

**6. JUDGMENT: setting aside: sufficiency of showing: mistake: negligence.**

such allowance. Appellants cite only *Glenn v. Statler,* 42 Iowa 107, and *Snyder v. Ives,* 42 Iowa 157, to the point that the mistake was due to the negligence of plaintiffs' attorneys, and that the mistake was one of law.

But we think the negligence of the attorney, if there was any, was not such culpable negligence as to deny to the clients relief, and that the showing was sufficient. It must be remembered that this is a petition suit, and that the decree entered was an interlocutory one. We shall not attempt to set out all the record on this point. Briefly, it appears that the attorney who prepared the original petition was ignorant of the true facts and of the rights of the parties, and the allegations thereof were made by the attorney under mistake and misapprehension. The information was furnished to him by an abstracter, a party other than the plaintiffs. The information so given by the abstracter was verbal, and the attorney did not have an abstract. Later, he received a copy of

the will; after the will was received, the attorney concluded that plaintiffs were entitled to a larger interest; he made a memorandum to then amend the petition, but went to the hospital at Iowa City, and when he came back, on account of his nervous condition and of his sickness, overlooked this circumstance. He says that, at the time, he was on the verge of a nervous breakdown, and was advised by his physicians that he must give up his work, or some of it. Plaintiffs were nonresidents of the state, and the attorney had no direct communication with them. After the first decree was entered, the attorney sent the parties in the east a copy of it. The attorney's attention was called to the mistake by a nonresident attorney. The attorney drawing the original petition claims, and the evidence so shows, that he had intended to amend the petition, but failed to do so because of physical and nervous disability resulting from his own sickness and a surgical operation on his son. The first decree which was prepared was not spread upon the records during a term of court, but during vacation, and within a few days after it was spread on the records, the application to expunge was made. The record had not been signed. The plaintiff drawing the petition had sole charge of the case.

A discretion was lodged in the trial judge as to setting aside the decree, and we are of the opinion that there was no abuse of such discretion. As bearing upon this proposition, see *Farmers Exchange Bank v. Trester*, 145 Iowa 665.

Surely, no one has been prejudiced by the proceedings. The contention of appellants at this point is so clearly without merit that we shall content ourselves with stating appellees' propositions and the authorities cited in support thereof, without further discussion. The propositions advanced are that the decree was interlocutory, and in the breast of the judge until final judgment was entered, and subject to amendment; that such a decree in partition is under the control of the court until final judgment, and may be modified or rescinded even after the term; that the right to amend in

partition should be granted at any stage of the proceedings, even after interlocutory decree. To sustain these, appellees cite: 30 Cyc. 252, 253; *Sweatman v. Dean* (Miss.), 38 So. 231; 15 Encyc. Pl. and Pr. 810; *Aull v. Day* (Mo.), 34 S. W. 578; *Fogle v. Pindell* (Mo.), 154 S. W. 81; 23 Cyc. 905; 30 Cyc. 220; *Ruppe v. Glos* (Ill.), 95 N. E. 1033.

They say, also, that, because defendants were notified of the application to vacate the interlocutory decree and appeared thereto, and because the record was never signed by the judge, and the record entry made in vacation, the court had authority to vacate this decree, to permit the amendment and to direct a hearing upon the merits, citing Code Sections 242, 243; *Bosch v. Kassing*, 64 Iowa 312; *First National Bank v. Flynn*, 117 Iowa 493, 496; *McConnell v. Avey*, 117 Iowa 282; *Hamill v. Schlitz Brewing Co.*, 165 Iowa 266; *National L. & I. Co. v. Bleasdale*, 159 Iowa 529; *In re Assignment of Wilson*, 138 Iowa 225; *Lambert v. Rice*, 143 Iowa 70.

Another proposition of plaintiffs' is that their attorneys had no authority to waive or modify the interests of the plaintiffs in the lands in controversy, and that, if they had such authority, they did not so intend, and the allegations of the petition and the provisions of the first decree constituted such a mistake as entitled plaintiffs to have the record entry expunged and the cause opened, citing *Barthell v. Roderick*, 34 Iowa 517; *Stewart Lumber Company v. Downs*, 142 Iowa 420, 424; *Ennis v. Fourth Street Building Assn.*, 102 Iowa 520; *Peterson v. Koch*, 110 Iowa 19; *Craig v. Craig's Estate*, 167 Iowa 340; *Partridge v. Harrow*, 27 Iowa 96; *Logan v. Southall*, 137 Iowa 372; *County of Buena Vista v. I. F. & S. C. R. Co.*, 49 Iowa 657; *Farmers Exchange Bank v. Trester*, 145 Iowa 665.

There is some argument on the question as to the admissibility of evidence, and perhaps some other matters, but the cause was tried as in equity, and the evidence admitted subject to objection. These other matters are of minor impor-

tance, and, while they have been considered, we think the points discussed are controlling.

It is our conclusion that the decree of the district court was right, and it is, therefore,—*Affirmed.*

GAYNOR, C. J., WEAVER and EVANS, JJ., concur.