LUELLA STEFFEN et al., Appellants, v. P. FREDERICK BEREND et al., Appellees.

WILLS: Construction—Duty to Harmonize All Provisions—Devise 1 "To Children and Their Heirs." All provisions of a will must, if possible, be harmonized, and if not possible, then the provisions of a codicil, being the last expression of testator's wish, must be followed in preference to the provisions of the will proper. So held where the will devised a life estate to children with remainder over to the descendants of the children, while a codicil devised the estate in fee "to children and their heirs."

PRINCIPLE APPLIED: By the will, testator's estate was divided into four parts. Each part was to be held in trust for the support of a child or for the support of the child's descend-

ants in case the child died. If a child died, leaving no descendants, then such share was added pro rata to the remaining shares. After all the children died, then the trust ceased, and the property descended to the descendants of the children, each group of descendants taking the share of their parent as it then stood.

By a codicil, testator provided that the trust should cease after 10 years, and that the property should then descend "to said children and their heirs, as provided in my said will, upon the termination of the trust." Held that, harmonizing the conflicting provisions and giving due weight to the codicil as the last expressed wish of testator, the respective shares, at the end of the 10-year limit, descended absolutely to the children then living and to the descendants of those children not then surviving—that descendants of a living child took nothing.

**WILLS:** Annulment—Right of Executor to Object. Executors and
2 trustees under a will may not object to a decree setting aside a will, on the ground of the mental incompetency of the testator, *after due hearing to the court*, simply because some of the devisees were then insane and assumed to consent to such decree.

**INSANE PERSONS:** Guardian Ad Litem—Allowance. Reasonable
3 allowances to guardians ad litem for services rendered in the cause are proper. Sec. 3485, Code, 1897.

*Appeal from Scott District Court.—F. D. LETTS, Judge.*

MONDAY, JANUARY 22, 1917.

REHEARING DENIED TUESDAY, MAY 22, 1917.

SUIT in equity to set aside a decree in probate, which decree, it is alleged, was entered by consent in a contest over the probate of the will of Johann Berend, deceased; and to reinstate the contest over the probate of the will. Defendants demurred to the petition, and their demurrer was sustained, and judgment was entered against plaintiffs for costs. Plaintiffs appeal.—*Affirmed.*

*Helmick & Boudinot* and *Scott & Scott,* for appellants.

*Charles Grilk,* for appellees.

DEEMER, J.—I. Johann Berend died
testate, leaving surviving the defendants
herein, four children. He died seized of
something over 300 acres of land in Scott
County, Iowa. His will was filed for pro-
bate January 25, 1910, and notice of the probate thereof
was given by publication, as the law requires. P. Frederick
Berend, a son of the deceased's, and one of the defendants
herein, filed objections and exceptions to the probate of
the will, on the ground that the testator was of unsound
mind at the time the will and the codicil thereto were exe-
cuted. It is alleged that this contest came on for hearing on
December 7, 1910, and a jury was impaneled to try the said
contest; but, before the contest was determined, the defend-
ants herein, being all the surviving children of the deceased,
agreed upon a settlement of the contest, and entered into an
agreement in writing for a division among themselves of all
the property of the deceased. The jury was discharged, and
a decree was entered pursuant to the stipulation, setting
aside the will and codicil, and a decree was entered award-
ing to each of the children a one-fourth interest in dece-
dent's estate, save that P. Frederick Berend's share was di-
minished by the sum of $500, and he relinquished all claims
he had against the estate for services rendered and labor
performed, and Louisa Berend, one of the heirs, was
awarded $200 out of the estate for care of and services to
the deceased during his lifetime. The decree also provided
that, as P. Frederick Berend had already placed a mort-
gage upon his undivided share of the estate, this mortgage
should attach to his one-fourth interest, and he was awarded
a particular 80 acres as his share of the estate. Referees
were appointed to appraise and divide the real estate ac-
cording to the provisions of the stipulation and the de-
cree. This decree, as will be noticed, was entered Decem-
ber 13, 1910. The present action was commenced some

1. WILLS: con-
struction: duty
to harmonize
all provisions:
devise "to chil-
dren and their
heirs."

time in the year 1915, and stands upon an amended and sub-stituted petition filed November 9, 1915. It was brought by or for Luella Steffen and Amalia Berend, minor children of Louisa Berend, one of the defendants, by their next friend, William Gethmann, a trustee appointed by the will of the deceased, and also the executor named in the will, the Mary and E. W. Gethmann Benevolent Association, and Adolph Gethmann, a contingent trustee under the will.

The minor children claim that they have a vested inter-est in the estate by way of remainder under the will. Gethmann claims that he was appointed trustee and also executor under the will, and given specific compensation for his services as trustee. The benevolent association claims that it had a contingent interest under the will, and Adolph Gethmann claims that he was appointed a trus-tee under the will in the event William Gethmann was un-able to act.

It was also averred that, since the commencement of this suit, defendants Edward Berend, Louisa Berend and Minnie Berend have been adjudged insane, and that William Gethmann has been appointed as their permanent guar-dian. It was also admitted that the usual notice for the probate of the will was given by publication, and that P. Frederick Berend filed objections and exceptions to the pro-bate of the will, which resulted in the decree hitherto men-tioned. But it is averred that, as no notice was given of the probate thereof except by publication, no one is bound by the decree entered therein, except those who were per-sonally served with notice thereof, or who appeared in the probate proceedings. It is further averred that, at the time the contest came on for hearing, and at the time the settle-ment was made, Edward, Louisa and Minnie Berend were each and all unsound of mind and incapable of transacting business, and that the purported settlement and agreement for the division of the property was null and void, and a

fraud upon the rights of the plaintiffs to this suit. They further alleged that the decree of the probate court, based upon the agreement and stipulation, was absolutely null and void and of no effect, for the reasons stated.

A guardian ad litem was appointed for the defendants who are claimed to be of unsound mind, and the guardian filed a demurrer to the petition, upon the grounds: (1) Misjoinder of parties plaintiff; (2) the action is barred by the statute of limitations; (3) no grounds are stated for a modification of the decree in the probate proceedings; (4) the court had no power to vacate or set aside that decree; and (5) that plaintiffs are not entitled to the relief demanded or to any relief. This demurrer was sustained, and the appeal is from that order.

At the outset, it is necessary to go to the will and codicil of the deceased. By the terms of the original, so far as material to this controversy, testator devised all his property in trust to William Gethmann, for the following uses and purposes:

"(3)   My said trustee shall take and hold said property for the benefit of my four children, P. Frederick Berend, Edward Berend, Louisa Berend and Minnie Berend, and their descendants, which property shall be divided into four shares. The shares of my three children, Edward Berend, Louisa Berend and Minnie Berend, shall in the beginning be equal, and that of P. Frederick Berend shall be $500 less than that of either of my other three children.   *   *   *

"(5)   My said trustee shall devote the net income of the respective shares of each of my said children in each year so far as necessary to the support of such child, and in case of death of any child, the descendant or descendants of such child shall be entitled to such net income, so far as may be necessary for their support and education. Any portion of such net income not required for such pur-

pose shall be added to the share of such child or its de-
scendants in such trust fund.

"(6)   My said trustee shall keep a separate account
of such child's share of the trust fund.

"(7)   In the case of the death of any of my said chil-
dred prior to the last survivor of them, leaving no children
or lineal descendants, or the death of the last lineal de-
scendant of any deceased child, then such share represented
by such decedent shall be divided equally between the re-
maining shares of said trust still existing, and such share
shall cease to exist.

"(8)   When all of my children above named shall have
died, then forthwith the trust hereby created shall cease,
and the whole trust fund and all the trust property of every
kind then existing shall pass to and vest in the heirs of my
deceased children; each child's share as constituted at that
time (in case such child has children) shall descend to such
child's children in equal share.

"(9)   It is my will that, in case of vacancy of the trust
hereby created, that Adolph Gethmann be and he is hereby
appointed to fill such vacancy.

"It is my will that said William Gethmann, or any
trustee appointed by or under this will, shall receive a rea-
sonable compensation for his services as trustee, which
compensation shall be fixed by the district court of Iowa
for Scott County.   *   *   *

"I hereby appoint my nephew, William Gethmann, ex-
ecutor of this will, and hereby exempt him from giving
any bond, either as executor or trustee under this will."

The codicil, which was executed something like a year
and three months after the signing of the original will,
contained these provisions:

"Clause 1.   It is my will that the trust in my last will
and testament created shall terminate at the end of ten
years from the date of my death, and at that time that the

shares of my said children in said trust estate shall vest in said children and their heirs as provided in my said will upon the termination of the trust, except that, in case my daughter Minnie Berend shall die without lineal descendants, either before or after the termination of said trust, it is my will that one fourth of her share then remaining shall go to the Mary & E. W. Gethmann Benevolent Association, a corporation to be hereafter formed for benevolent purposes.

"Clause 2. In case the income from the share of any of my children shall not be sufficient for the support of such child, it is my will that my said trustee shall sell such part of the share of said child as shall be sufficient for the support of said child.

"Clause 3. It is my will that my children or their husbands who are capable of farming shall have the first opportunity, if they so desire, to lease the real estate belonging to my estate from my said trustee, but no one child shall have such right as to more than 80 acres of said real estate."

Appellants' main point is that this will and codicil gave to the testator's children a life estate only in his property, with remainder over to the grandchildren, among whom were the plaintiffs herein, and that the consent decree made in the probate proceedings was in fraud of their rights and should be set aside. Both the will and the codicil create a trust estate in Gethmann, the trustee, which, by the will, was to last until the death of each and all of defendants' children. Until that time, the income from the shares of each of the children was to be used, so far as necessary, for the support of such child, or, in the event of the death of any leaving descendants, then for the support and education of such descendants; and, in the event of the death of any of the children prior to the death of the last survivor, leaving no children or lineal descendants, or the

death of the last lineal descendant of any deceased child, the share represented by such decedent was to be divided equally among the remaining shares still existing. It was expressly provided that, when all the testator's children died, the trust should cease, and the whole of the fund and of the trust property should pass to the heirs of his deceased children, and that each child's share as constituted at that time should descend to such child's children in equal shares; that is, *per stirpes* and not *per capita*. By the codicil, the trust estate created by the will was to terminate at the end of ten years from testator's death, and at that time the shares of his children in the trust estate were to vest "in said children and their heirs," as provided in his original will, on the termination of the trust, with the exception of Minnie Berend's share, as stated in the codicil. It is quite clear that, by the terms of the original will, testator's estate was given in trust to the named trustee, for the use and benefit of the four children named, during their lives or the lives of their children or descendants down until the death of the four children, and that, upon the happening of the latter event, the property was to pass to and vest in the heirs of the deceased children. By the terms of the codicil, the trust estate was to terminate ten years from the testator's death, and at that time, the shares of his children were to vest in these children and their heirs, as provided in his will, upon the termination of the trust.

The difficulty here is to determine what became of the estate upon the determination of the trust at the end of the 10-year period. Did it go in fee to his children who were then all alive; or did they take but a life estate in the incomes for their support, with the remainder to their heirs; or did they, the children then in being, and their heirs, among whom were the plaintiffs first named, take an estate in fee simple?

These questions are not easy of solution, because of the

failure of the testator to make plain his wishes and desires. By the terms of the original will, testator's children were never to receive anything more than the use and income of their share of testator's estate during their lives, and, upon the death of all of them, the trust was to cease, and the entire estate was to pass to the heirs of his deceased children.

By the terms of the codicil, the trust estate was to cease at the expiration of ten years from testator's death, and the shares of said children were then to vest in said children and their heirs, as provided in said will, upon the termination of the trust estate. Under the codicil, it is apparent that some estate was to vest in testator's children and their heirs at the termination of the trust estate. Appellants say that this was a life estate in the child or children, with remainder over to their heirs; while appellees say that the estate vested at that time in fee in such of testator's children as were then living and the heirs of such children as were then dead, if there should be such children. The gift under the codicil was to testator's children and their heirs. This, under our law, would be a gift in fee to such of the children as survived, and to the heirs of those who did not survive. *Pierson v. Lane,* 60 Iowa 60. At common law, a devise to one and his children created a joint tenancy, when the person named had children at the time of the devise; but when no such children existed, the term "children" was construed as a word of limitation, and as the equivalent of "issue" or "heirs of his body," creating a conditional fee, or an estate tail. But a devise to one and his heirs was universally held to create an estate in fee simple. In order to find an interest in these plaintiffs, it is necessary to overlook the codicil, which clearly provides for a vesting of the estate in testator's children and their heirs at the expiration of the 10-year trust period. Appellants say that the phrase is qualified vy this proviso:

"As provided in my said will upon the termination of the trust." This, it will be noticed, is followed by an exception which clearly indicates that he intended his children to take something more than a life estate or the income from the property; for it provides that, in the event one of the children died without lineal descendants, either before or after the termination of the trust, one fourth of his share remaining should go to the benevolent association. Manifestly, if appellants' contention be correct, Minnie Berend had no share which could pass after the termination of the trust; for she, according to their claim, had nothing but a life estate, which would cease at her death. Moreover, at her death she could not have lineal descendants to whom her property might pass.

It will be noticed that the original will provides for a division of the estate into four shares, which were allotted to his four children, and these were to be kept separate. True, these shares were not to pass by the original will directly to the beneficiaries; they or their children were simply to have the use of the income thereof until the death of all of testator's children, when it was to pass to the heirs of his deceased children. But by the codicil we think it clear that testator intended a vesting of the shares theretofore allotted to his children directly in such children or their heirs at the end of the 10-year trust period. This is the only way to harmonize the different provisions of the will, and it is our duty to so construe it as to harmonize all of its provisions, if that be possible; and if it is not possible, and there be a conflict between the codicil and the will, then the codicil, being the last expression of the testator, must govern.

II. Although it is charged that the decree setting aside the will was based upon the stipulation and agreement entered into between the parties, and that they or some

2. WILLS: annuiment: right of executor to object.

of them were *non compos mentis* when the agreement was entered into, the record shows that the will was set aside after a hearing to the court, a jury being waived, upon the testimony introduced pro and con upon that hearing.

The court found that testator was insane, and the decree ordered that the will be set aside and held 'for naught: It then appears that the parties, testator's children, had agreed upon a settlement and division of the estate, and the decree approved and confirmed this settlement. Attorneys' fees were allowed for the attorneys representing the proponents of the will, in the sum of $1,000. It also appears that the trustee appointed by the will was also a party to the will contest, and appeared by counsel. This, no doubt, is the reason why nothing is said in argument respecting his rights as trustee or executor regarding the interests of the benevolent association. Surely, neither the trustee nor the executor named in the will may, under these circumstances, attack the decree entered upon the will contest.

III. The benevolent association has

**3. INSANE PERSONS: guardian ad litem: allowance.** nothing more than a contingent interest, which never could amount at any time to more than one fourth of Minnie Berend's one-fourth interest in the estate of her father, and, according to the tacit admissions of counsel for plaintiffs, its cause of action, if it ever had any, is barred by the statute; so that we need not give this matter further attention.

The only serious question in the case is whether or not the minor children of Louisa Berend, she (Louisa) being yet alive, have or had a vested interest in the estate of Johann Berend under the will and codicil which we have hitherto set out. We reach the conclusion that they did not acquire such interest, and for this reason the demurrer to the petition was properly sustained.

The trial court allowed the guardian ad litem for the defendants herein the sum of $100, and of this, complaint

is made in the errors assigned. The brief of points does not cover this alleged error, and nothing is said in argument respecting the matter, beyond a mere statement of error. The amount is not challenged, and we know of no reason why a guardian ad litem properly appointed for insane defendants may not have compensation for his services. Section 3485, Code, 1897, authorizes the appointment of such a guardian. Finding no error, the judgment must be, and it is,—*Affirmed.*

WEAVER, EVANS and PRESTON, JJ., concur.

SALINGER, J., concurs in result.