E. J. RUNDEL, Executor, Appellant, v. BURTON MATTER, Defendant, LILLIAN M. CROFUTT, Intervenor, Appellees.

GIFTS: When Undelivered Gift is Vested. A deed which provides
1 that, after the death of the grantor and his wife, the grantee shall pay the purchase price in stated amounts to grantor's heirs, but which specifically names said heirs, works a complete vesting of the several separate gifts in the named persons as of the date of the deed, even though a donee dies before the payment is due.

NAMES: Descriptio Personae. The term "heir," when added to
2 the name of a person who is to be the recipient of a gift, will, ordinarily, be considered only as a description of the said person.

BILLS AND NOTES: Determinable Time. Whether a deed which
3 provides that the grantee shall, after the death of grantor, pay the purchase price to a named person, is a negotiable instrument, *quaere*.

*Appeal from Tama District Court.*—J. W. WILLETT, Judge.

SEPTEMBER 30, 1918.

THE father of Jessie M. Rundel conveyed lands to his son, the defendant Burton Matter, upon condition that, out of its purchase price, he should pay a stated sum to his "heirs," including Jessie. This payment was to be made within a stated time after the death of the "grantors," who were the father and mother of Jessie. Jessie died after her father did, but before her mother. This suit is brought by the executor of Jessie's will. The ultimate question is whether, since the purchase price was to be paid to the

heirs of the grantor, after the death of the grantors, the
executor has any right to recover, in view of the fact that
Jessie left no issue surviving, and died while one of the
grantors was still living.   In effect, it is the claim of the in-
tervenor, one daughter, that the sum to be paid Jessie has
reverted to the estate of the father.   The defendant Burton
Matter has not made the payment, but avers a readiness to
do so, upon order of court, contending, however, that the
claim of the plaintiff rests upon a testamentary writing not
duly executed; and that, at all events, there is here a gift
*inter vivos* which never vested. in Jessie—wherefore, she
had nothing to dispose of.   He asserts further it was the
intention of all parties that said sum should go to Jessie
herself, and to no one else, and to her only in event of her
surviving both the grantors.

The trial court held the sum claimed by appellant had
reverted to the estate of Jessie's father.—*Reversed and re-
manded.*

*Frank Hollingsworth,* for appellant.

*C. J. Stevens* and *C. E. Walters,* for appellees.

SALINGER, J.—I.   When the parents made deed to Bur-
ton Matter, an agreement was made, as part of the same
transaction.   This agreement recites that Burton may have
the deeded premises for a stated annual
rental, until the death of both grantors;
that this rental is to be payable to the sur-
vivor, if one grantor die before the other;
that no part of the purchase price is to be paid during the
lifetime of either of the grantors; that, when the grantee
comes into full possession, by reason of the death of both
grantors, then, within two years from the death of these
grantors, he is to pay the purchase price, with interest from
one year after the death, equally to the "heirs."   The heirs
are named, and they include Jessie, by name.   The grantee

1. GIFTS:
when undeliv-
ered gift is
vested.

agrees to thus and then make payment.  As said, Jessie survived one of her parents,.but was outlived by the other.  The

exact question is whether this agreement should be construed to mean that payment should be made to no one who was not, in strictness, an "heir," it being contended that, while Jessie was named as a beneficiary, or payee, the gift was upon limitation that she was to receive only by virtue of being an heir, and that payment was due to no one and the donation vested in no one except heirs who were living after both grantors had deceased.  The ultimate argument against the appellant is that the gift from the parents never vested in Jessie, because it could not vest until after both parents had deceased; and that, when that event occurred, Jessie was not an heir, because she died, leaving no issue.

2. NAMES: *descriptio personae.*

Conditions in this country are not now, if ever they were, such as prevailed in England when the rule was built up that words like "heirs" or "heirs of his body" must be given a strict construction, and cannot be held to be the equivalent of "children," or to be merely a description of a class whom the testator desired to inherit from him. When this rule of strict construction was built up and adhered to, such terms were not equivalent to "children," because, unlike here, all a man's children were not his heirs, because usually, only one of them was.  This alone would tend to differentiate the attitude of the American courts from those courts which built said rule.  And the American authorities overwhelmingly make a departure from the strict construction of the English courts.  It may be fairly said to be the consensus of the great weight of American authority that, since one's children are always his heirs at law, that a devise or gift to "my heir," followed by a naming of the child who is of necessity an heir, should never be construed to mean that the devise shall not become vested

in the child if, at the time when the donor dies, the child is not still, in strictness, an heir, unless the context or something else compels such an interpretation. One line of reasoning upon which many American cases proceed is that, in strictness, no one has an heir while he is still living, and therefore when, in life, one makes a gift to a named child, payable after the donor has died, the use of the word "heir," in addition, does not evince a desire to have that word understood in its strict technical sense, but uses the word as a mere matter of description; and that this is especially true where it does not appear that the donor was anything other than the ordinary layman. The question is an interesting one; but we do not determine it, because we should not, on the issues and the record in the case we have before us. We should not pass upon what the intention was, as to who should have title after the death of the donors, and what effect the death of the donee before that of the donor should have, because we hold title vested while both donors and donee were living.

These donors sold their land, and were never paid the purchase price. They did not desire it to be paid to them. Instead, they directed the purchaser to pay a part of it to Jessie M. Rundel. He was to pay after the donors were dead. This indicates a desire that payment should not be made until after the givers had deceased, but it indicates no concern as to what the status of the donee might be when payment became due. Appellee urges there was a desire to keep the husband of Jessie from getting this money, under mutual wills. Nothing in the record shows the parents had any knowledge that such wills existed. It is further said there was a natural feeling against giving anything to one not a blood relative. The only evidence on that point is that the parents desired the share of the son to go to his wife, if she survived him. Nor should we assume the parents foresaw the daughter, a woman of 26,

would leave no issue. Nor that the daughter would die before they did. It may fairly be assumed they proceeded upon what the law has made into a presumption of fact, to wit, that the younger would survive the older. This argument, of course, tends to prove that they gave no consideration to what should be done if the daughter should die first. But that they made no provision for that contingency does not change that what they did tend to do was to make a gift which should be paid over to their child at a time certain. While it was uncertain when they would die, it was certain that this must occur at some time. Nothing suggests that these parents were controlled by a desire to keep their property from anyone who, in strictness of the law, was not an heir, rather than to benefit a child that would be their child even at a time when the strictness of the law might hold that it was not their heir.

But a truce to abstraction. Under our own decisions, this was a gift completed in the lifetime of the donor, with nothing but enjoyment postponed. On the day it was made, Jessie was their child, and they named her as a beneficiary. They used the word "heir" in addition, but that was purely descriptive matter. While, in strictness, the living parents had no heirs, in the popular acceptation of the term by laymen, Jessie was, at that time, not only their child, but their heir. They said to the son who had purchased the farm, "Pay Jessie, who is our heir, but do not let her have the money until after we have both died." In the latest expression of this court on the point (*Meyer v. Stortenbecker,* 184 Iowa 441), this court held, upon essential facts quite similar to the ones at bar, that what was done in this case was a contract made for the benefit of the children of the seller; that these children obtained complete title *eo instanti;* and that nothing was postponed except the enjoyment of the gift. The writer filed a dissent in that case. It was his view that one reason why title did not vest was that

the gift remained revocable in the lifetime of the donor, and that it was immaterial that there had not been a revocation. As said, the majority held otherwise; and the writer is unable to distinguish that decision, and thinks it must conclude this case. See, also, *Pyle v. East,* 173 Iowa 165 In the *Meyer* case, a mother sold her land to one son, and directed him to pay the purchase price to certain of her children, named by her, and to make payment after her decease. There, as here, it was contended that there was a testamentary writing without required execution, and that the gift had not vested in any of the children; and one of the children demanded that the purchase price be dealt with as having reverted to the estate of the mother. All these contentions were overruled. It was further held that the transaction amounted to a contract between buyer and seller for the benefit of the children of the seller, and was enforcible by those children. It would follow the gift here vested while both donor and donee were still living; that the arrangement amounts to a contract made by the parents with one child for the benefit of the other children; and that these other children could enforce the contract as soon as the time of maturity fixed by the contract arrived. It would follow, in turn, that the executor of the estate of any of these children stands in the shoes of his decedent; that the person who has not yet paid the purchase price, and some of the children, may not settle that it is improper to pay over the share of another of the children to the executor of the will of that child; and that it is for the probate court to say, after payment to the executor has been made, what shall be done with such payment. It may become a material inquiry in that court whether, though the deceased daughter left no children, she has other heirs; whether she has creditors; whether she has devised her property by will. (And it stands admitted that she did.) At this time, Burton Matter is merely a buyer who has not paid over part

of the price, and nothing before us is warrant for having that sum revert to the estate of the parents. Whomsoever it may finally be held to belong to, the parents parted with it while they lived, and their estate has no claim upon it. While it is not controlling, it gives some support that defendant Matter, in his final report as executor of the will of his father, made no mention of the price of this land.

II. As we understand it, the appellees urge that the agreement before is, under the Negotiable Instruments Act, Code Supplement, 1913, Section 3060-a1 *et seq.,* a non-negotiable instrument; that it is not made payable to order or bearer, and has no more than the standing of a conditional order or promise. In effect, it is held, in *McClenathan v. Davis,* 243 Ill. 87 (90 N. W. 265), that such an instrument as this is negotiable, and Section 3060-a4, Code Supplement, 1913, provides that an instrument is payable at a determinable time if, *inter alia,* it is expressed to be payable on or at a fixed period after the occurrence of a specified event which is certain to happen, though the time of the happening be uncertain. But, assume this agreement is non-negotiable, and is but a conditional order or promise. That is not material if, as we hold, the title vested in the lifetime of both donor and donee, and that nothing but the enjoyment of the thing given depended upon a condition.

3. BILLS AND NOTES: determinable time.

We are constrained to hold that the demurrer of the defendant Matter should be overruled, and that if, on retrial, there shall be proved what the demurrer admits, said defendant should pay to the appellant executor the sum named in the agreement, with interest, as therein provided. —*Reversed and remanded.*

PRESTON, C. J., LADD and EVANS, JJ., concur.