LOUIS JOHNSON et al., Appellees, v. WENTLING A. COLER et al., Appellants.

WILLS: Construction—Vested (?) or Contingent (?) Devise. A devise directing the sale of real estate and the division of the proceeds among named legatees, with added clause that, *"should any of the legatees be dead at the time of the distribution of the proceeds, then said share shall go to his or her living heirs,"* conveys an interest which vests absolutely in the named legatees, on the death of testator.

*Appeal from Chickasaw District Court.*—W. J. SPRINGER, Judge.

NOVEMBER 11, 1919.

THE key question is whether the will provided a vested remainder or a contingent one. The trial court held the estate created was vested. Defendants appeal.—*Affirmed.*

*M. E. Geiser, J. A. Yarger,* and *H. F. Condon,* for appellants.

*Smith & O'Connor,* for appellees.

SALINGER, J.—I. The controversy arises over a provision in the will of one Coler, wherein he desires that his administrator, as soon after death as can conveniently be done, convert all of his real estate into money, and divide the proceeds as later directed, among ten. This is followed by a clause that one Louisa Robinson, who, testator states. is his sister-in-law, shall take as one of the ten. Then follows a direction that, "should any of the above-named legatees be dead at the time of the distribution of the proceeds of my real estate, then said share shall go to his or her *living* heirs."

Louisa Robinson died testate, but before distribution was made under the Coler will. Her devisees claim that the Coler will vested the share of Robinson in her immediately on the death of Coler, and that the fact that she died before distribution did not prevent her share, when distributed, from passing under her will. On the other

hand, defendant Walter Robinson, brother of Louisa Robinson, contends that his sister' took merely a contingent interest; that its vesting depended on whether she was alive when distribution was made, because the will provides that, if any of the legatees are dead when distribution is made, then such share shall go to such heirs of Robinson as are then living. To put it in the words of the brief point: that the devise in the will of John Coler to Louisa Robinson was contingent upon the condition that she be living at the time of the distribution of the proceeds of the sale of his real estate, and that, having died before that time, the appellant, as her only living heir, is entitled to said devise, and that the trial court erred in holding the devise to Louisa Robinson was not contingent upon said condition, and in holding that it vested in her when John Coler died, and that, therefore, it passed to her devisees, and not to her heirs. His prayer for decree is "that this defendant be adjudged and decreed to be the owner of and entitled to a one-tenth interest in the estate of John Coler, deceased, and in the proceeds from the sale of the real estate of said John Coler, deceased, the same being the share which would have gone to Louisa Robinson, were she living, and that said fund or estate be ordered to be paid to this defendant, and that, under the will of John Coler, deceased, this defendant is entitled to the same."

II.  We are not required to settle whether Louisa took a vested or a contingent interest. Her brother is not the heir of Coler, the testator, but of Louisa Robinson, the legatee. If Louisa took a vested interest under the will of Coler, her brother is entitled to nothing, because his sister willed all she had, to the exclusion of this brother. If Louisa took nothing under the Coler will because she died too soon, then her brother and heir is entitled to nothing, because his sister left nothing to inherit. Of necessity, then, the rights of defendant Walter Robinson depend upon

whether the will of Coler devises anything to Walter. The argument for the claim that the will does so is this:

"The will gives property to Louisa Robinson. It provides for a defeasance if she die before the distribution, and that, in event of her so dying, that her share shall go to her living heirs. I am her living heir. Therefore, her share goes to me, not because her title is contingent, but because the will of Coler gives me her share."

The sole question we have is, therefore, whether testator intended, by the use of the words "living heirs," to devise anything to Walter Robinson. His intent controls. *Fulton v. Fulton,* 179 Iowa 948; *In re Moran's Will,* 118 Wis. 177 (96 N. W. 367). Had the language of the will been that there was a devise to "Louisa Robinson and her heirs," the gift would be vested, and Walter would take nothing, because his sister, the devisee, had left him out of her will. A devise to one and his heirs is an absolute devise though "heirs" is added. *Steffen v. Berend,* 180 Iowa 127, at 135. In *Callison v. Morris,* 123 Iowa 297, 301, we held a devise to the widow for life, remainder to a son, additional provision that, if the son die before distribution, leaving issue, the estate should go to such issue, or, in the absence of issue, to the heirs of such deceased son, was "practically the same as a devise to him and to his heirs." In a devise to one and his heirs, or to one and his issue or children, these words are presumably words of limitation, and not of purchase, and may create a fee in the devisee. 40 Cyc. 1574. The word "heirs" in a will is primarily used in its legal or technical sense, and, unless the context shows a contrary intent, must be so construed. 40 Cyc. 1459. And where qualifying expressions are relied on to give the word "heirs" a meaning other than the technical one, they must be so direct and unequivocal as to imperatively require such interpretation. 40 Cyc. 1460; note citing *Beck's Estate,* 225 Pa. St. 578 (74

Atl. 607). Is this changed by adding "living" to the word "heirs?" Whether it does, is matter of construction, to ascertain intent.

We get no help from the cases cited. In them, it is made manifest that heirs or survivors of the devisee shall take. In *McClain v. Capper*, 98 Iowa 145, the clause was that, when the youngest child to whom there was a devise arrives at full age, "I devise that my real estate be equally divided between my children, their heirs or survivors of them." In *Taylor v. Taylor*, 118 Iowa 407, it was directed that, "at her decease or marriage" of the life tenant, the estate should "be equally divided between my children or their heirs, as the law directs."

The will under consideration is not like these. It does not provide that, when one heir becomes of age, the property shall be transferred to the other children, or to the heirs or survivors of these children, nor that, when there is a death or marriage, that a remainder shall pass to the children of testator, or go to heirs of these children as the law of descent and distribution provides. Both these directions are a clear gift to survivors, if a stated event occurs. There can be no question as to intention. And so of *Baker v. Hibbs*, 167 Iowa 174. The will there makes clear, and is held to make clear, that a remainder is to go to persons in a class, those living when a life estate falls in. See *In re Moran's Will*, 118 Wis. 177 (96 N. W. 367); *Fulton v. Fulton*, 179 Iowa 948; *Horner v. Haase*, 177 Iowa 115. But does this control as to a provision that a named legatee shall take, and if she die before distribution, her share shall go to her "living" heirs? Can this be said, in the light of all the will and of the existing circumstances to be more than a devise to the legatee "and her heirs?" Is it not a devise to Louisa and her heirs, rather than a devise to her heirs upon the happening of a contingency? If the will had made no mention of heirs of the legatee, and

Louisa had died before distribution, her heirs would have taken her share, had she died intestate. In that sense, the word "heir" added nothing to a naked bequest to the ancestor. Had the bequest been to Louisa and her heirs, it would have been, as seen, a bequest to her only—a grant of an estate in fee simple. *Steffen v. Berend,* 180 Iowa 127, at 135; 40 Cyc. 1574, 1575, 1655. Is this changed by the adding of "living" to heirs? If the effect of giving to one and his heirs is an absolute gift to the legatee, why not a devise to one and to his *living* heirs? Why should the last be construed to evince an intent to create a contingent remainder for the heirs living when the legatee dies? In strictness, no living person has an heir. *Rundel v. Matter,* 184 Iowa 518. And all heirs are living heirs, because one dead is not an heir. It would follow that a gift to one and his heirs is a gift to the ancestor,—a gift which living heirs, and living heirs alone, take on intestacy,—and follow, in turn, that the words "living heirs" amount to no more than "heirs," and that "living heirs" are words of description, rather than of purchase. We find nothing to the contrary in *Birdsall v. Birdsall,* 157 Iowa 363, and in *Wilhelm v. Calder,* 102 Iowa 348. Appellant has construed the words as we now do. He disregards the words "living heirs," because it is one of his claims that he takes as "heir" of his sister. If the said words operate to give on condition that the legatee be living at distribution, there is nothing for her "heir" to take. We are of opinion that the Coler will did create an estate which defendant could take as heir, if his sister, the legatee, had died intestate.

III. What standing, then, has the appellant? Though the Coler will created an estate which appellant might have inherited, he cannot do that, because his sister disposed of her estate to his exclusion. He can take nothing as the heir of his sister. Unless, then, it may be held that, when Coler directed that an estate should go to Louisa Robinson,

and that, on her dying before distribution, her share should go to appellant, the latter is the veriest stranger to the suit. If it were conceded that the devisees in the will of his sister get nothing, that does not give title to appellant. Unless it can be held that Coler intended appellant should have the devise to his sister if the sister died before distribution, appellant has no more standing than one who seeks to contest a will, though he would get nothing if the will were set aside. Can we hold Coler had the heirs of Louisa Robinson in mind? We have pointed out that the face of the Coler will makes no grant to defendant. It remains to be said that all the circumstances indicate that no grant to defendant was intended, and that the intent was to give Louisa a vested right, disposable by her will.

There is no controversy between the parties, and there should not be, over the proposition that, in construing a will, the intent of the testator, as manifested by the terms of the will, will be given effect, and that the intent is to be determined from taking all parts of the will together, and giving each and all full consideration, and taking note, also, of the relation of testator to the parties in interest, family arrangements, and of the circumstances which surround all concerned. See *Canaday v. Baysinger,* 170 Iowa 414, 417; *Fulton v. Fulton,* 179 Iowa 948, 958; *Jordan v. Woodin,* 93 Iowa 453, 460; *Van Rheenen v. Veenstra,* 47 Iowa 685, 687.

It is not at all controlling that there was to be a sale and distribution of proceeds. It is clear that the postponement of enjoyment of the gift to Louisa Robinson and the other nine legatees was not for reasons personal to the legatees, but for the convenience of the estate. And where the postponement is for the convenience of the estate, and not for reasons personal to the legatee or devisee, the devise vests. 40 Cyc. 1656, 1657, 1679; 30 Am. & Eng. Encyc. Law (2d Ed.) 771; *Armstrong v. Barber,* 239 Ill. 389 (88 N. E.

246) ; *Thomas v. Thomas,* 247 Ill. 543 (139 Am. St. 347, 349, 93 N. E. 344) ; *Mettler v. Warner,* 243 Ill. 600 (134 Am. St. 388, 395, 396, 90 N. E. 1099) ; *Van Dyke's Admr. v. Vanderpool's Admr.,* 14 N. J. Eq. 198; *Haviland v. Haviland,* 130 Iowa 611, 615; *Olsen v. Youngerman,* 136 Iowa 404, 410; *Scofield v. Olcott,* 120 Ill. 362 (11 N. E. 351). A remainder over to certain persons after the death of the life tenant, with provision that executors should have power to sell and make distribution, is held to create a vested estate. Such provisions, save in a few exceptional cases, have been held to refer to the time of enjoyment, and not to the time of vesting (*Haviland v. Haviland,* 130 Iowa 611, 614, citing *Archer v. Jacobs,* 125 Iowa 467, *Blain v. Deen,* 160 Iowa 708, 715, *Tarbell v. Smith,* 125 Iowa 388, *In re Estate of Proctor,* 95 Iowa 172, 175, and *Callison v. Morris,* 123 Iowa 297) ; not to the size of the interest (*Ross v. Ayrhart,* 138 Iowa 117).

"Where property is ordered sold and the proceeds divided, the interests given in the proceeds are vested even before the sale, unless the legacy is, in terms, contingent." 40 Cyc. 1662.

Also, see pages 1669 and 1670. So, then, the postponement to the time of distribution is no evidence of intent that anyone other than the named legatees should take under the Coler will. Again, all doubts are resolved in favor of vesting. *Woodard v. Woodard,* 184 Iowa 1178; *In re Estate of Freeman,* 146 Iowa 38, 44; 40 Cyc. 1650, 1660, 1668; *Putbrees v. James,* 162 Iowa 618, 625; *Ross v. Ayrhart,* 138 Iowa 117, 121; *Mitchell v. Vest,* 157 Iowa 336, 342; *Shafer v. Tereso,* 133 Iowa 342, 344, 345; *Archer v. Jacobs,* 125 Iowa 467, 476; 40 Cyc. 1650. The presumption is strong, when the legatees are named, and there are words of gift in addition to the direction to pay over, divide, or distribute. *Olsen v. Youngerman,* 136 Iowa 404, 410; 40 Cyc. 1656. The court will hesitate to find an in-

tention not to vest, where the gift is to legatees by name. *Armstrong v. Barber,* 239 Ill. 389 (88 N. E. 246, 250, 30 Am. & Eng. Encyc. Law [2d Ed.] 773). It is most often in cases where the giving is evidenced only by the direction to pay over that contingent remainders are declared. See *Woodard v. Woodard,* 184 Iowa 1178; *Fulton v. Fulton,* 179 Iowa 948; *McClain v. Capper,* 98 Iowa 145; *Baker v. Hibbs,* 167 Iowa 174; *Taylor v. Taylor,* 118 Iowa 407. It is presumed, then, that testator intended to give a vested interest; and this is another argument against appellant. 'Coler was giving his sister-in-law express and kindly consideration. A vested interest alone would give her something which, in case of need, might be conveyed or converted into value, even during the life of the first taker. There is that reason, then, for holding that a vested interest should be presumed to have been, and was, intended. Even as this is so, is there reason for holding that Coler did not have the brother of his sister-in-law in mind as a beneficiary, and did not intend to favor him, at the expense of giving the sister-in-law something of no substantial value. There is no evidence as to what were the relations between Coler and this brother of his sister-in-law. It is not a case such as the sister-in-law's having children whom testator might have desired to favor, or her having a husband whom he did not wish to share in the gift, if the wife died first. The identity of Louisa's heirs was wholly undetermined, and it is strained to assume that testator intended to benefit them at the expense of his sister-in-law. The improbability that this was the intention is increased tenfold by the fact that there were ten residuary legatees or remaindermen named; and the uncertainty as to who would be the ultimate beneficiaries would, therefore, be multiplied by ten. It can scarcely be believed testator had this intention in all the ten cases. There is no reason to presume, from anything that appears in the record, that testator de-

sired to favor any particular class of heirs at the expense of others. In fact, this suggestion goes to the very root of the whole contention of appellant.

Testator evidently felt a sufficient friendship for his wife's sister, Louisa Robinson, to include her among the ten legatees who were to share equally in the value of real estate or its proceeds. It is unreasonable that he would knowingly attach, as a condition to this expression of friendship, a condition which would make the gift absolutely useless to the very person whom he evidently wished to benefit, unless she would survive the widow, and be living at the time of distribution, and as unreasonable that he would thus qualify and nullify his bounty to one for whom he evidently had regard, in favor of unknown or undetermined persons who might eventually become her heirs. It is much more rational to give the language its natural meaning, as indicating an intent to make the gift absolute, without regard to whether the legatee would survive the life tenant. Such an interpretation would be technically accurate, and also give effect to the apparent desire of the testator to bestow a certain bounty, not upon a certain class, but upon certain individuals whom he desired to benefit.

In *Fedderson v. Matthiesen*, 185 Iowa 183, there was a will with a provision that a son might sell certain property upon a price consented to by the other heirs, and could sell only at a price satisfactory to those children, and that, after the property is *so* sold, $1,000 is to be given to the son. The son evinced no intention to sell, and died before selling, and the property has since been sold to pay debts, on application by the administrator of the estate of the father. We point out that if, as contended, this provision is held to be operative only upon a sale made by the son in the lifetime, on the consent of and at a price satisfactory to his brothers and sisters, then the will leaves an intestacy,

because it has no provision as to what shall be done with the $1,000 legacy if there be no sale, or sale other than one upon consent of the coheirs. We use the presumption against intestacy as we here use the one in favor of vesting. We say, "It is difficult to understand why the father should feel more liberal to this son as to the proceeds of one kind of sale rather than another," and we add:

"Starting, then, with the fact that, notwithstanding the grant of the use of the lands, the father was minded to give August an additional $1,000 on some sale, and applying the doctrine that intestacy is not favored, we have little difficulty in reaching the conclusion that this son was to have $1,000 from the proceeds of any sale, provided such sale was an authorized one. * * * Nothing indicates that the testator based his bounty upon a preference for one authorized sale over another authorized sale."

In *Rundel v. Matter*, 184 Iowa 518, parents contracted that a sum should be paid their daughter Jessie after the death of the "grantors" (both parents). Jessie outlived one, and was outlived by the other parent. It was claimed that, therefore, her title either never accrued or lapsed. We held nothing was shown that indicated a desire that the death of the daughter should nullify the intent to give; that "nothing suggests that these parents were controlled by a desire to keep their property from anyone who, in strictness of the law, was not an heir, rather than to benefit a child that would be their child, even at a time when the strictness of the law might hold that it was not their heir." We conclude there was no intent to make any of the heirs of Louisa Robinson a beneficiary under the Coler will.— *Affirmed*.

LADD, C. J., EVANS and PRESTON, JJ., concur.