CLARA HILLER et al., Appellants, v. MARION HERRICK et al., Appellees.

**WILLS: Life Estate (?) or Fee (?)** A devise to a wife, in words
1    unquestionably, but not *expressly*, creating a fee, if such words
     stood alone, but followed by a later nonrepugnant paragraph
     directing a division of all property "remaining" after the
     death of the wife equally among testator's children, must, in
     order to give effect to *all* that testator has declared, be con-
     strued as a life estate only, with power to sell.

**REMAINDERS: Vested (?) or Contingent (?)** A devise of a
2    life estate, with power to sell and with direction to divide all
     property "remaining" after the death of the life tenant among
     named persons, creates a *vested* remainder.

*Appeal from Black Hawk District Court.*—H. B. BOIES,
Judge.

SEPTEMBER 29, 1920.

ACTION to quiet title to real estate. Decree for the de-
fendants, and plaintiffs appeal.—*Affirmed.*

*Mears & Lovejoy,* for appellants.

*E. H. McCoy, P. E. Ritz, Courtright & Arbuckle,* and *Pick-
ett, Swisher & Farwell,* for appellees.

WEAVER, C. J.—The case was tried below upon an agreed
statement of the facts. That statement, so far as it ma-
terially affects the questions of law presented for our con-
                       sideration, may be abbreviated as follows:
I. WILLS: life          On August 24, 1895, Lorenzo Moore died
estate (?) or          testate in this state, seized of a farm of 120
fee (?)
                       acres in Black Hawk County. He was sur-
vived by his wife, Hannah Moore, and nine children of their

marriage, to wit: Clara Hiller, Charles E. Moore, Emily Spencer, Oliver H. Moore, Kent K. Moore, Anna Holland, Mary S. Moore, Harry Moore, and Rebecca Herrick. The will left by the deceased, as originally drawn, was executed by the testator January 23, 1892, and provided for the disposition of his estate as follows:

"I give and bequeath to my beloved wife Hannah Moore, should she survive me, all property, both real and personal, of which I may die seized at the time of my death."

"I further direct that at the death of my wife all property both real and personal, shall be equally divided, share and share alike, to my legal heirs."

On August 20, 1895, four days before his death, the testator added a codicil to his will, in which he used the following language:

"At the death of my wife, Hannah Moore, I desire and direct that all the property both real and personal then remaining shall be divided between my legal heirs, share and share alike."

As already stated, the testator was survived by his wife and all of their nine children. The wife remained in the possession, use, and control of the property until her death, intestate, on February 7, 1904. In the interim between the death of Lorenzo Moore and the death of the widow, Hannah Moore, their daughter Rebecca Herrick died testate, devising all her estate to her husband, George W. Herrick, who has since died, leaving heirs. The nature of this controversy is such that further tracing of the line of descent of the property left by Lorenzo Moore is not necessary. The plaintiffs are the eight surviving children of Lorenzo Moore. The defendants are the claimants by descent of whatever title George W. Herrick acquired by devise from his deceased wife, Rebecca. It is the claim of plaintiffs that the devise by the will of Lorenzo Moore to his wife, Hannah Moore, was of an absolute fee, and that Rebecca took nothing under said instrument; and that, as she died in the lifetime of her mother, she acquired nothing from the estate of the latter. If, then, Rebecca was vested with no title or interest by the

will of her father, and is not entitled to claim anything through her mother, her own will, naming her husband, George W. Herrick, as her devisee was, of course, inoperative, so far as this property is concerned. The defendants assert title to the one-ninth interest in the land, on the theory that the will of Lorenzo Moore devised to his wife only a life estate, with added power to sell and dispose of the land (a power which she never exercised), and that the remainder, subject to said life estate and power of sale, was vested in the nine children of the testator and life tenant in equal shares, at the death of Lorenzo Moore. If this theory be correct, then Rebecca Herrick died seized of an equal one-ninth share in such remainder, which interest passed by her will to her husband, George W. Herrick, and through him to the defendants.

The trial court held with the defendants' theory of the law, but adopted the view that the devise of a life estate to the widow, Hannah Moore, was not in lieu of dower, and by its decree confirmed the defendants' title to two thirds of the disputed one-ninth share of the land in controversy. The land having, by consent of the parties, been sold, pending litigation, the decree provided for a partition of the proceeds of sale, on the basis of the finding here stated. From this adjudication, plaintiffs appeal.

I. At the threshold of their case, appellants very properly discuss the nature of the provision made by Lorenzo Moore's will for the benefit of his wife, and they insist that the clear intent of the testator was to vest his widow with the entire fee of the estate. In support of that contention, they review with much ability and force the familiar precedents which this very fruitful species of litigation has called into existence. That the intent of the testator is to prevail is conceded. It is the most familiar rule or phrase in the law of testamentary construction—but unfortunately is sometimes neglected, in the search for precedents to sustain a desired conclusion. In no other class of cases is mere precedent as to the use or meaning of human language of so little real value. No two men make their wills under precisely similar

circumstances, and words used to express a certain intent in one case may be employed with a, very different intent in another. Precedents in such cases may be very properly employed as aids, but they should not lead either court or counsel to insist on a construction of a will which, in view of the situation disclosed in the particular case under inquiry, it is clear was not in the mind of the testator.

The average husband and father, in anticipation of death, desires to make such disposition of his estate as will best serve the interests of his family. Ordinarily, he makes first provision for his wife; and, subject to her needs and comfort, he provides for his children; and, in the absence of reasons influencing him to show preference between them, he treats the latter on terms of equality. To accomplish this end, one of the most common, and perhaps most reasonable, plans adopted is for the father to leave the estate, largely or wholly, to the wife for life, with remainder over to their children, in equal shares. It is also very common, and apparently increasingly common, for the testator to add to the life estate for his widow a power to sell and dispose of the property, if she shall so elect or need. In the absence of special circumstances indicating some purpose to be served by making the remainder to his children contingent on any event except his own death, the natural and inevitable conclusion in the human mind, independently of any rule of law, is that, in so providing by his will, he intends to vest his children, and each of them, with a share in his estate, of which share the child shall come into possession and enjoyment at the death of his or her mother, who is the preferred beneficiary of the testator's bounty.

The form in which this purpose is expressed is not fixed or invariable. Wills are often drawn by persons having little or no knowledge of law, and words are often employed, even by lawyers, in other than their strict, legal meaning; but the true and actual meaning of the testator will be allowed to prevail, if, in view of the instrument as a whole, and the circumstances attending its making, such intent is fairly shown. *McKemcy v. Ketchum*, 188 Iowa 1081;

672 HILLER v. HERRICK [189 Iowa

*Rundel v. Matter,* 184 Iowa 518; *Johnson v. Coler,* 187 Iowa 734; *McEachron v. Trustees,* decided March 11, 1921.

Coming directly to the will in the instant case, appellants argue, not only that the language of the instrument shows the testator's intent to devise the entire fee to his wife, but that this court is, by its former decisions, committed to such construction. They point insistently to the words, "I give and bequeath to my wife Hannah Moore, should she survive me, all property, both real and personal, of which I may be seized at the time of my death," and say that these words have always been held sufficient to devise a fee. This is doubtless true in all cases where no other language is employed in connection therewith, to limit or modify such devise. It is equally true and well settled, however, that such language is entirely consistent with the devise of a life estate, where the will as a whole makes evident the testator's intent to create such estate. It is also to be admitted that, among our precedents, cases may be found where the express or implied power given the devisee to dispose of the devised property is held inconsistent with the idea of a mere life estate; but counsel concede, as indeed they must, that a power of sale may be added to a life estate, without enlarging it to a fee.

This is the natural result of an application of the rule so frequently cited, by which courts are constrained to give effect to the testator's intent, as it shall appear to be expressed by the will as a whole, in the light of all the circumstances attendant upon its execution, without regard to technical rules of construction. Of course, where different provisions of the will are found to be irreconcilable, or so repugnant that both cannot stand, the first expression must prevail; and if, in the will now before us, the testator had clearly and expressly declared his purpose to give the property to his wife in fee, it would be given effect accordingly by the court, even though, in a later clause, he had attempted to limit or control her right to dispose of it as she should see fit. But he did *not* in express terms give her the fee. True, he did use words sufficient to carry the fee, had they

not been accompanied by other terms and directions indicating a purpose to create for her only a life estate, with power to convey the fee. It is the duty of the court, if it be reasonably possible, to so construe the will as to give effect to all its provisions, and so that nothing will be held void for repugnancy. See *Richards v. Richards,* 155 Iowa 394; *Elberts v. Elberts,* 159 Iowa 332. And this, in our judgment, is what the court below did.

If it should be thought necessary to seek a precedent so nearly parallel in its facts with the one at bar as to be fairly controlling upon the question presented by this appeal, it is to be found in the comparatively recent case of *Canaday v. Baysinger,* 170 Iowa 414. There, a husband's will provided for his wife, as follows:

"I bequeath to  *  *  *  my wife, the piece of land *  *  * we live on, *  *  *. I also wish her to have a choice milch cow. I further wish her to have *  *· * [another described tract of land]. *  *  * I also wish my wife to have all the household and kitchen furniture except *  *  *. After my wife's death it is my wish that the remainder of the household and kitchen furniture be sold and the land also to be sold and the money to be equally divided between my five heirs."

Except for the final clause, beginning with the words, "after my wife's death," the gift to her would, of necessity, have to be construed as absolute; but, in order to give effect to all parts of the will, we held the devise to be only a life estate. The opinion was written by our late colleague Justice Gaynor, and sets out the governing rule of law in clear and apt terms, as follows:

"The bequest to his wife creates no particular estate in the wife by its terms. There is no provision that she takes a fee or an absolute title, or that she is given the power of alienation. There is nothing to indicate the estate intended to be invested in the wife. Without further limitation upon this bequest, or rather devise, it might be construed into an absolute devise; but, with a limitation which is not inconsistent with the estate created, we are of the opinion that

the testator intended, by what he calls a bequest or a wish, to give to the wife only such an estate as would terminate upon her death, and that upon her death the land be sold, and be equally divided between the heirs. Where the will is capable of such a construction as gives to all the parts of the will the full force which the language imports, it must be so construed. Where the testator in the devising clause to the first taker has not so designated the estate intended to be devised that the remainder over would be repugnant to the devise, then both would be permitted to stand. To hold that the first part of the will gave to the wife an absolute fee, with power of alienation, would be to add to the provisions of the will itself, and would, of course, render the latter clause repugnant to such a devise; but to hold that the first part of the will, not having designated the particular estate intended to be devised, and not having by express provision indicated the estate intended to be created in the wife, from which power of alienation might be inferred, and not having, by express words or necessary implication, given to her the power of alienation,—the devise of the remainder over is not inconsistent with such provision, and therefore both may stand, and each be in force. The estate devised to the wife is indefinite and uncertain. Its scope and limitation are not fixed in the will. If the testator intended to give her a fee, with power of alienation, he has not said so in the will. In the last clause of the will, he has indicated his intent in making the devise, to wit, that, upon her death, it should be sold, and the proceeds divided among his heirs. This is a clear expression of an intent on his part to limit the estate vested in his wife to a life estate. There could be no remainder for sale and disposition at her death, if the construction contended for by the defendant were to prevail. Therefore, we would be compelled to enlarge the provisions of the will in favor of the wife, and to give it a larger scope than the testator has given it in the will itself, and we would be compelled, in so doing, to render nugatory the clear and unambiguous expression of testator's intent that, upon her death, the land should be sold, and divided

among his heirs. To hold that she had only such an estate as would continue during her life, and such as would terminate upon her death, gives to the last clause, directing the sale and division among his heirs, its full force. This gives to all the terms of the will their full force and effect, without destroying either, neither provision being necessarily inconsistent with the other."

In another very similar case, we held the devise to the wife to be a life estate, saying:

"By construing the entire will as giving to the plaintiff a life estate only, every part thereof is given effect, and the evident intention of the testator is carried out, and that is what the law demands." *Boekemier v. Boekemier,* 157 Iowa 372.

It is equally true in the case before us that to hold with appellants is to render void the provision in the original will for the benefit of his heirs, and carefully repeated in the codicil, executed as the testator was about to die; while to affirm the construction given by the trial court makes effective every part and provision of the writing. In other words, if the widow took the fee, as appellants contend, it was within her power by a will of her own to disinherit all her children, and divert the whole estate left by the father to beneficiaries outside of the family. The language of the will as a whole, and all the attendant circumstances shown, negative any such intent on the testator's part. On the contrary, subject to a life estate and power of sale in his widow, it is hardly open to serious question that he intended to give his whole estate to his children in equal shares—to Rebecca, no less than to the others.

The decision in *Bills v. Bills,* 80 Iowa 269, which is largely relied upon by the appellants, announces no rule of law which is at all inconsistent with that which the court below applied to this controversy. The rule there applied is neither more nor less than the one to which we have already expressed our adherence, and which we never have denied, namely: that, where there is an irreconcilable repugnance between two provisions of a will, the first must stand, and

the latter be rejected; and this is all which *Bills v. Bills* can fairly be said to decide. Difference of opinion may arise, and often will arise, upon the further question whether any incurable repugnancy exists; and upon that inquiry each case must be considered with respect to its own peculiar circumstances, and each provision of the instrument so construed, if it be possible, that all may be given the effect intended by the testator. So considered, we hold that the trial court did not err in holding that the widow of Lorenzo Moore took only a life estate under her husband's will.

II. As an alternative ground for their claim of title, plaintiffs further argue that, even if this court hold with the trial court that the widow, Hannah Moore, took only a life estate, it still must be held that the interest of Rebecca Herrick in the land was only a contingent remainder, and, since she died in the lifetime of her mother, the remainder

2. REMAINDERS: vested (?) or contingent (?)

was extinguished, and plaintiffs, being all the heirs of Lorenzo Moore who were living at the death of their mother, succeeded to the entire title to all the property. The subject of remainders—when they are to be considered vested, and when merely contingent—has been so frequently and copiously discussed by this court in the last few years that we are not disposed to extend this opinion for its further treatment. *Archer v. Jacobs,* 125 Iowa 467; *Lingo v. Smith,* 174 Iowa 461; *Sleeper v. Killion,* 182 Iowa 245; *Jonas v. Weiers, Craig & Ray,* 134 Iowa 47, 49; *Fulton v. Fulton,* 179 Iowa 948; *Atchison v. Francis,* 182 Iowa 37; *Dowd v. Scally* (Sept. 30, 1921); *Johnson v. Coler,* 187 Iowa 734; *Putbrees v. James,* 162 Iowa 618, 625; *Mitchell v. Vest,* 157 Iowa 336; *Woodard v. Woodard,* 184 Iowa 1178. These are but few of the many cases in which we have, with more or less fullness, considered the question whether a gift over to devisees (namely, children of the testator), after a life estate in another, is vested or contingent; and it is quite rarely that we have been brought to the conclusion that such a provision is contingent, and then only when the intention to make it contingent is very clear. The language used in the will now

before us is quite like, if not practically identical with, the
stock form of expression used over and over again in wills
coming up for adjudication, where, after making provision
for the wife for life, the testator adds, "After her death, I
direct that the property be equally divided between my
children," or, "between my heirs." Barring a slight tend-
ency to wabble a little, in a very few instances, we have
steadily held, in every such case, that the remainder over
is vested from the instant of the testator's death. Nor is the
direction to "divide" or to "sell and divide" between the
"children" or "heirs" after the death of the wife, without
more, any necessary obstacle to the vesting of the remainder.
See 40 Cyc. 1662; and *Johnson v. Coler,* 187 Iowa 734; and
cases there cited. Also, see our recent case, already cited,
*Canaday v. Baysinger,* 170 Iowa 414, where the will, as we
have said, is, in essential respects, quite like the one at bar,
in that, while not using the words "life estate" or "for
life," the intention is made clear by the direction to divide
the property between the children after the wife's death.
Speaking of the case there tried, we said:

"The issue, therefore, to be determined herein, and which
is decisive of the controversy, is, Did Eliza Canaday
(widow) take a fee-simple title in the premises under the
will, or did she take only a life estate? If she took only a
life estate, the fee vested in the heirs of David Canaday (tes-
tator), subject to the life estate, and vested immediately
upon the probate of the will, which related back to the time
of the death of David."

Such, too, was our holding in *Atchison v. Francis,* supra,
*Haviland v. Haviland,* 130 Iowa 611, *Blain v. Dean,* 160 Iowa
708, and in many other like cases, and such is the great
weight of authority generally.

The same subject is discussed very fully in *Johnson v.
Coler,* supra, where the executor was directed to sell the
testator's property and divide the proceeds between certain
persons. One of these persons died before the distribution
was made. The question at issue was whether the bequest
or devise so made created a vested or contingent interest in

favor of a devisee who died before distribution had been made under the will. Holding the interest to be vested, we quoted approvingly the rule stated in 40 Cyc. 1662, as follows:

"Where property is ordered sold and the proceeds divided, the interests given in the proceeds are vested even before the sale, unless the legacy is in terms contingent."

The cases where we have held that a provision in a devise that property be sold and proceeds divided is inconsistent with a vested remainder, are where the limitation over is to heirs or persons *then living* at the death of the life tenant. Here, the devise of the fee or remainder is to the "heirs" of the testator; and we have held, in consonance with the authorities generally in such cases, that the word "heirs" "refers to the persons answering that description at the time of his death, unless a contrary intent is plainly manifested by the will." *Mitchell v. Vest*, 157 Iowa 336, 342.

It follows that the trial court was also correct in holding that the remainder over, after the life estate of Hannah Moore, was vested in the heirs of the testator, and that Rebecca Herrick, as one of the heirs, shared equally with her brothers and sisters in such remainder, and that, upon her death, such interest passed, under her will, to George W. Herrick.

The decree appealed from is—*Affirmed.*

EVANS, PRESTON, and SALINGER, JJ., concur.