C. D. WHITNEY, Appellee, v. MARY S. WHITNEY, Appellant.

No. 45236.

SEPTEMBER 17, 1940.

Ralph N. Lynch, for appellee.

Ryan & Ryan and Lehan T. Ryan, for appellant.

HAMILTON, J.—The ground for divorce alleged in the original petition was cruel and inhuman treatment. Later, by amendment, the additional ground of habitual drunkenness was added. The petition was filed September 28, 1938. On the same day, defendant signed and filed "Appearance and Waiver of Time" in which she entered her appearance, waived term time and time to plead and consented that the court take immediate jurisdiction of her person and of the subject matter of the action. Just previous to this, a written stipulation, relating to property rights and custody of the three minor children aged 17, 15 and 13 respectively, had been entered into, fixing the rights of the parties in the event a decree was finally entered for plaintiff. This stipulation was signed by the defendant and by her attorneys. By its terms, no alimony was provided for the defendant. Later, on October 11, 1938, defendant filed answer containing certain admissions and a general denial of all other material allegations; in all of said proceedings defendant was represented by reputable and highly competent counsel.

It appears without dispute in the record that appellant left her husband and children on or about May 15, 1938, without cause and never returned home until November 15, 1938, nearly two months after this action was commenced. The record is that, at the time she returned home, the plaintiff permitted her to remain in the home on what is termed "probation" in an effort to see if appellant could or would reform and redeem herself, but there was no reconciliation and no return to cohabitation as husband and wife. The husband testified that when she came back:

" * * * we had a conference with the children and explained to her that the purpose of having her come back at all or permitting her to come back was an effort to see whether or not she could be a proper mother to the children and could take proper care of the home. So far as we were concerned, there would be no consideration of living together as man and wife."

During this period, she slept with her daughter. The husband says in his testimony that she did very well for about two weeks, but, alas, she soon fell back into her old habit of drinking to excess. She would send the children to the neighbors to borrow money with which to purchase liquor, sometimes sending the children for the liquor and carried on her drinking in their presence. She finally became in such condition that the family physician was called in and he advised that a mental specialist be called. Dr. Price, a member of the board of insanity, was called and he advised that she be taken before the commission. This was done and in March 1939 she was adjudged insane and committed to the hospital for the insane at Mount Pleasant, Iowa.

In the meantime, the divorce action was still pending— the record remaining the same as above indicated. On June 24, 1939, counsel for defendant, acting on their own motion, out of fairness to the defendant, filed an amendment to the answer in which the court's attention was called to the fact that the defendant had been committed to the hospital for the insane; that she was not competent or able to be present to conduct her defense and that the action should rest in abeyance until such time as she was able to look after her case; and that they considered her adjudication of insanity terminated their employment. In the amendment they also alleged the facts concerning her return home and plead a reconciliation and condonation. To this, a reply was duly filed by the plaintiff in which condonation and reconciliation is denied and in which it is alleged that the proceedings, already hereinbefore mentioned, were had while the defendant was entirely sane; that the agreement relating to property matters, custody of children and alimony was fully and completely discussed, approved and agreed to by herself and her counsel; that a guardian ad litem had been appointed to fully protect the interest of the defendant and there was no reason that the case should be further postponed.

The record shows that, on June 26, 1939, on application of the plaintiff, the matter of the defendant's insanity and commitment to the hospital was called to the attention of the court and request made that a guardian ad litem be appointed to

protect her interests; whereupon, the court did appoint E. D. Perry of Des Moines, Iowa, a member of the bar of that city, guardian ad litem for defendant. On June 27, 1939, said guardian ad litem filed his answer; on the issues thus joined, the case proceeded to trial, evidence was introduced and a decree entered for plaintiff. Thereafter, during the same term of court, the defendant, by her brothers and sisters, designating themselves as next friends, filed a motion to set aside the default and the decree, to which an affidavit of merit, signed by a brother-in-law of the defendant, was attached and also an answer, signed by the brothers and sisters, as next friends, was tendered. To this motion, plaintiff filed resistance, alleging that the brothers and sisters, as next friends, had no standing in court and were mere interlopers; that the issues in the case were fully made up at a time when defendant was sane; that her subsequent insanity did not deprive the court of jurisdiction; that a guardian ad litem was duly appointed and that trial was had and decree entered and this decree was res adjudicata between the parties. There was a trial and a full hearing at which 10 witnesses were orally examined and the relationships of the parties and their conduct fully aired. At the conclusion of such hearing, the court overruled the motion to set aside default and decree. The order was entered of record on October 25, 1939. On the same day, the court overruled a motion for temporary support money.

On October 30, 1939, there was served on the attorney for plaintiff a notice of appeal reciting that: "* * * above named defendant, Mary S. Whitney, and those acting for her and in her behalf and for themselves do hereby appeal * * *" from the order overruling motion to set aside default and decree, application for temporary support money and from decree of divorce granted on the 27th day of June, 1939, and from order appointing guardian ad litem and all other adverse rulings.

On December 7, 1939, appellee filed, in this court, motion to dismiss said appeal on the ground, among others, that the appeal was not perfected in time under Code section 12832 and reiterating the fact that the brothers and sisters, as next friends, had no standing in court to instigate the appeal or

to instigate the original proceedings to set aside the divorce decree.

In an effort to meet this seemingly fatal attack, distinguished counsel for defendant sought to remedy the situation by filing what is termed "Ratification of Defendant, Mary S. Whitney" in which it is stated that she has been discharged from the hospital and is now sane; that, since becoming sane, she has been advised of the action on her behalf by her brothers and sisters and that she ratifies, approves, confirms and adopts all that has been done, etc., in her behalf and further adopts the appeal taken on her behalf. This document bears date of December 8, 1939, the day after the aforesaid motion to dismiss appeal had been filed and, on the same day, defendant, Mary S. Whitney, perfected a second notice of appeal. Thereafter, on March 22, 1940, after appellant had filed her abstract of record together with her brief and argument, appellee served and filed his second motion to dismiss the appeal which is based on substantially the same grounds as the first. These motions were ordered submitted with the case. Since the motions to dismiss go to the question of jurisdiction of this court to entertain the appeal, they require our first attention.

No appeal was taken and perfected by anyone from the final decree of divorce until more than four months had elapsed since the entering of said decree; however, four months had not elapsed since the overruling of the motion to set aside the decree of divorce and, if this proceeding, which was admittedly instituted by the brothers and sisters as next friends of the defendant, was valid and one recognized under the statutory law and decisions of this court, then the appeal from the order of the court overruling said motion is timely. Therefore, the first question for solution relates to the validity of these proceedings by the brothers and sisters in the capacity of next friends to the defendant.

■ It should be kept in mind that we have confronting us here under the record a situation where the defendant was sane and competent at the time the court acquired jurisdiction of the person and of the subject matter of the action and became insane after she had entered her appearance, filed her answer and consented to trial at any time; that, in compliance

with the statute, and of the long established procedure in this state, when the incompetency of the defendant was called to the attention of the court, a guardian ad litem was appointed to defend and protect the interests of the defendant; that such guardian ad litem appeared, filed an answer, attended on the trial, representing the defendant, and, after such hearing, the decree of divorce was entered. No attempt was made to have a regular guardian appointed for the defendant. Appellee contends that, as next friends, the brothers and sisters have no standing in court to present such a motion and that they were and are mere interlopers. An investigation of the authorities seems to bear out the appellee's contention.

The legislature of this state, at one time, recognized "next friend" actions for persons of unsound mind. See section 2781, Revision of 1860, which provided:

"The action of a person of unsound mind, must be brought by his guardian, or if he has none, by his next friend. * * *"

Subsequently, the words "by his next friend" were omitted from the statute. See section 2569, Code of Iowa, 1873. There is now no provision in any of our statutory law for a "next friend" action for a person of unsound mind. The only provision now remaining in which "next friend" actions are recognized are those relating to minors. See section 10995, Code of Iowa, 1939. The law specifically provides that actions for persons judicially found to be of unsound mind must be brought by their guardian or, if they have none, the court or judge or the clerk, in vacation, may appoint a guardian for the purpose of the action. Likewise, the defense of such insane person must be by his guardian or by a guardian ad litem appointed by the court as was done in the instant case. See sections 10996 and 11001, Code of Iowa, 1939. See also Tiffany v. Worthington, 96 Iowa 560, 65 N. W. 817.

It is the contention of appellant that the defendant, having been found to be of unsound mind during the pendency of the action, that a decree could not be taken against her nor a guardian ad litem appointed for her without notice thereof to the defendant and an order made making the guardian of the defendant a party-defendant and that the court erred

in not so holding. She cites in support of her contention: section 11001; chapters 541 and 539; and sections 12588 and 12589, all of the 1935 Code of Iowa. Manifestly, the last two sections relating to sale or mortgage of property by guardians of minors have no application. Section 12613 of chapter 541 of said Code does provide that the provisions of chapters 539 and 540 and all other law relating to guardians for minors and regulating or prescribing the powers, duties or liabilities of each and of the court or judge thereof, insofar as they are applicable, shall apply to guardians and their wards appointed under sections 12614–12618, inclusive. These latter sections include idiots, lunatics or persons of unsound mind. The difficulties with appellant's theory is that the same contention was made in the case of Tiffany v. Worthington, supra, wherein it was sought to make the provisions of the statute, relating to representation of minors by next friend, applicable to persons of unsound mind, but without success, the court pointing out that the "next friend" provision was omitted from section 2569 of the Code of 1873. On the other hand, it has been the universal practice to recognize the power of the court to appoint a guardian ad litem to defend a person judicially declared to be of unsound mind. It is true that section 11001 of the Code does provide a method of bringing into court the regularly appointed guardian of either a plaintiff or defendant during the pendency of an action, but this section does not cover a situation where there is no guardian. In the instant case, there was no guardian. Section 11000 is in the alternative and provides that the defense of a person judicially found to be of unsound-mind or of one confined to one of the hospitals for the insane "* * * must be [brought] by his guardian, or a guardian appointed by the court to defend for him." Under the last quoted language, the guardian to defend, i. e., a guardian ad litem, is recognized equally with a regular guardian. That the guardian appointed by the court to defend, referred to in Code section 11000, has reference to what we term "guardian ad litem", see statement in Steffen v. Berend, 180 Iowa 127, at 138, 161 N. W. 994, at .998, wherein Judge Deemer, speaking for the court, said:

"The amount is not challenged, and we know of no reason why a *guardian ad litem* properly appointed for insane defendants may not have compensation for his services. Section 3485, Code, 1897, [same as 11000, Code of 1939] authorizes the appointment of *such a guardian.*" (Italics ours.)

The only service of notice necessary to confer jurisdiction on the court to appoint a guardian ad litem for an insane person is the service of the original notice of the commencement of suit. Notice is not required to be made upon the guardian ad litem. Of course, the statute contemplates that the person appointed as guardian ad litem shall be apprized of such fact and have opportunity to defend for his ward before judgment is entered against such ward. The last clause of section 11000 specifically provides "* * * no judgment can be rendered against him until defense has been made as herein provided." Clearly, the court had jurisdiction to render the decree of divorce in this case. Likewise, it is clear that the brothers and sisters, as next friends, had no standing and were mere interlopers in attempting to set aside the decree and to take an appeal.

No party to the suit and no person authorized by law to represent any such party having taken an appeal from the decree of divorce within four months from the date of its rendition, it necessarily follows that plaintiff's motions to dismiss said appeal must be and are sustained and the appeal must be and is hereby dismissed.—Appeal dismissed.

RICHARDS, C. J., and OLIVER, MILLER, STIGER, BLISS, SAGER, and MITCHELL, JJ., concur.